## Case No. 4,934.

### FOREMAN v. BIGELOW et al.

[4 Cliff. 508; 7 Cent. Law J. 430; 18 N. B. R. 457; 7 Reporter, 137; 26 Pittsb. Leg. J. 128.][1]

Circuit Court, D. Massachusetts. May Term, 1878.

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission. 7 Reporter, 137, and 26 Pittsb. Leg. J. 128, contain only partial reports.]

Dryden & Dryden and McComas & Mc-
Keighan, for complainants.

W. G. Russell, George Putnam, Moorfield Storey, and Sidney Bartlett, for respondents.

CLIFFORD, Circuit Justice. Fraud does not render a contract void, but voidable only at the option of the party defrauded, both at law and in equity, whether the fraud was committed by one of the contracting parties upon the other, or by both upon persons not parties to the transaction, the rule being that where the fraud was committed by one of the parties upon the other, the contract remains operative and in force until it is disaffirmed by the injured party. Chit. Cont. (10th Ed.) 626; Add. Cont. (7th Ed.) 228; Clough v. London & N. W. Railway, L. R. 7 Exch. 34; Jones v. Carter, 15 Mees. & W. 722; Upton v. Englehart [supra].

Due consideration will be given to both defences, but it will be more convenient to examine the one addressed to the merits before considering the question whether the claim is barred by the statute of limitations.

Considered broadly, the bill of complaint seeks to enforce from the respondents the payment of the entire capital stock of the company, or such portion of the same as may be necessary to pay the debts of the corporation less the amount any particular holder of the stock may have paid towards his shares. Three classes of shares were issued, as plainly appears from the allegations of the bill of complaint: 1. Shares to the amount of $350,790, fraudulently issued to the directors in payment for the mining lands which they, at a greatly overvalued estimation, conveyed to the corporation. 2. Unpaid shares to the amount of $46,210, issued to the directors without any consideration. 3. Shares to the amount of $100,000, issued by the corporation to such persons as took an equal amount of the mortgage bonds of the corporation at ninety per cent.

Viewed in the light of these suggestions, it is plain that it is sufficient for the respondents to show that the complainant cannot sustain any claim against them as holders of the first issue of the original stock, as the bill of complaint does not charge that the respondents are holders of any particular issue of the stock, or either of the other issues. Such being the state of the pleading, it is open to the several respondents to assume that his stock, as charged, is wholly of the first class of the stock which was issued to the directors in payment for the mining lands, the rule being that pleadings which are uncertain or ambiguous must be taken in the sense most adverse to the pleader. Story, Eq. Pl. (7th Ed.) § 257; Foss v. Harbotue, 2 Hare, 503; Simpson v. Fogo, 1 Johns. & H. 23; Ayck. Ch. Pr. 113; Parker v. Nickson, 7 Law T. (N. S.) 461.

Certificates of shares of that kind were issued to the amount of $350.790; and, nothing being alleged to the contrary, the several respondents in this controversy may properly assume that they are charged with holding of shares in the capital stock, the certificates of which were of that issue which were entered upon the books of the company as shares paid up in full. Issued, as these shares were, to the directors in payment for the mining lands, they were, as between the grantors of the land and the directors issuing the shares, fully paid up, as the shares paid for the land, and the land conveyed paid for the shares; and all this appears upon the books of the company. Transferees of the shares took the certificates with nothing on their face to show any unfairness, and with nothing appearing on the books of the company to put them upon inquiry. Suppose that is so, still the complainant contends that such payment was made in mineral lands at a fraudulent valuation, not binding on the corporation. Admit that, and still the fact remains that the land was actually received by the company in full payment for the stock, and that the shares were issued and delivered as fully paid up shares. Taken as a whole, the averments of the bill of complaint show that the transaction in purchasing the mineral land, and in issuing the first class of stock in payment for the same, was a gross fraud upon the company which cannot be sustained; but it does not follow that the present suit against the respondents is the proper remedy to redress the injury, for the reason that the contract was duly executed by the execution of the deed of conveyance to the corporation, and by issue of fully paid up shares to the corporation for the

whole amount of the agreed consideration of the mineral land.

Nothing can be plainer in legal decision than that the title to the mineral land passed to the corporation, and that the title to the paid-up stock passed to the directors. Being formally executed the contract must stand until it shall be rescinded, or the assignee, if he prefers that course, may retain what the company received for the stock, and seek redress in damages against those who defrauded the corporation. And the redress is at his command, but he certainly cannot be allowed to disaffirm the contract only in part, and affirm it as to the residue, as he must do in order to maintain the present suit against the respondents.

Beyond all question the present respondents are bona fide purchasers and holders of shares in the capital stock of the company, which the books of the company show were fully paid for by the directors, and which, by the terms of the contract between the directors and the grantors of the mineral land, were fully paid in the manner stipulated by the contract. Under such circumstances it cannot be that the complainant, without disaffirming the contract, can be allowed to set up the theory that the property taken in payment of the shares was less than their estimated value, and to seek redress for the difference against bona fide purchasers of the same in the open market. Gross fraud may have been perpetrated between the parties to the sale and purchase of the mineral land; but it is nevertheless true, so far as the shares of the capital stock are involved, that the shares, as between the corporation and innocent purchasers of the stock in open market without notice, knowledge, or means of knowledge of the fraud, were paid up, as shown by the books of the corporation. Notice of the fraud as respects the respondents is not alleged, nor is there an intimation in the bill of complaint that any facts or circumstances were known to the respondents, to put them upon inquiry in respect to any such imputation.

Innocent purchasers of the stock in the open market are not liable in such a case; but the remedy of the corporation is against the guilty perpetrators of the fraud in their individual capacity. Support to the opposite theory is attempted to be derived from the adjudication of the bankrupt court; but the decree of the bankrupt court was only an adjudication that, for the purpose of paying off the indebtedness of the company, a call and assessment be made on the stock of one hundred per cent., less any sum or sums that may have been paid thereon. Properly considered, as a whole, the decree of the bankrupt court does not absolutely fix and determine the amount to be assessed. Instead of that, it merely calls for one hundred per cent. less all payments; nor does the decree in any respect contradict the theory that the class of stock first issued was fully paid up before it was put upon the market; and, if so, the court is of the opinion that the proper remedy of the complainant is against the perpetrators of the alleged fraud, which he might have enforced the moment he was appointed assignee of the bankrupt's estate. Holders of shares issued improperly stand on a different footing from the holders of shares which the company had no power to issue, as the purchaser in the latter case acquires nothing, and cannot, in general, be held as a contributory. 2 Lindl. Partn. (3d Ed.) 1381; Bank of Hindustan v. Alison, L. R. 6 C. P. 54, 222. But the mere fact that a person has become a shareholder pursuant to a scheme which is ultra vires will not relieve him from liability as a contributory, if the shares he has taken can be considered as legally existing, and he was himself a party to the scheme, or had knowledge of the fraud. Even where the shares were fraudulently issued, it is necessary to give strict attention to the precise facts in order to ascertain what are the rights of the parties in the case. The respondents were not subscribers to the stock, but the purchasers of the shares in the open market as paid-up shares. It was held in Carling's Case that, where the contract was to take paid-up shares, the court could not convert the contract into one for unpaid shares, for reasons which are obviously sound and correct. Carling's Case, 1 Ch. Div. 124.

Where there is a contract, even if fraud be imputed, the party seeking redress must disaffirm the contract, or proceed for damages against the perpetrators of the fraud. Such a party must throw over the agreement altogether, or he must take it as a whole. He cannot adopt as to one part, and reject it as to the rest. De Ruvigne's Case, 5 Ch. Div. 323. Certain shares of capital stock were allotted as fully paid up shares, and the court held that, as the shares had been allotted to a stranger as paid-up shares, they could not be considered otherwise, and that neither he nor his alienees could be liable to contribute in respect of the shares. Ex parte Currie, 7 Law T. (N. S.) 486.

Argument, to show that the transaction of issuing the stock in payment for the mineral land would have been valid if unmixed with fraud, is scarcely necessary, as the proposition is one which finds support in the daily transactions of life. Spargo's Case, 8 Ch. App. 413. Shareholders are not required to suspect fraud or to institute inquiries where all seems fair and conformable to the requirement of law and fair dealing. Waterhouse v. Jamieson, L. R. 2 H. L. Sc. 29. Where certificates of shares were issued as fully paid up, when in fact no payment had been made, it was held in the chancery court of appeal, reversing the vice chancellor, that by the issue of the certificates the company were estopped from alleging that the stock was not paid up, and that an innocent holder of the shares could not be placed on the

list of contributories · in respect to such shares as unpaid shares. Nicholl's Case, 26 Wkly. Rep. 334.

Three of the judges gave opinions: The master of the rolls said: "Where you have a receipt given you by the company, a final receipt as a certificate of payment, what more is a bona fide purchaser to ask for, and what occasion has he to make inquiry? He has the representation of the company by the certificate that the shares are fully paid up. It appears to me the company, having made that representation by the certificate to be used by the vendor as evidence of title, is estopped from saying afterwards that the company has not received the money. * * * It appears to me impossible that the company should be allowed to say the shares were not paid up in due course." James, L. J.: "Every person connected with the company who issues a certificate for paid-up shares in money, when the money or value has not been paid, is guilty of a personal wrong towards the company, and may be made answerable for it in exactly the same way and to the same extent as if the money had been taken out of the coffers of the company to pay up the shares, or as if by some fraud of the directors and officers receipts had been given for the payment when payment had not been made. If any person is a party to such a breach he can be made answerable for it, but that cannot affect the position of one who says, 'You made a representation to me, and you are bound by every principle of law and equity to make good the representation upon the faith of which I was induced to act.'" Thesiger, L. J., held that any such shareholder may show either that the shares have been paid up in fact, or that the company whom the liquidator represents have, by their words or conduct, estopped themselves from disputing that the shares have been so in fact paid up.

Certificates of shares in due form were issued as paid-up shares, and there is much reason to hold that the corporation, as to innocent holders of the same, is estopped to set up the defence that they are void. They admit that the shares were paid up to the extent of fifty per cent, and the opinion of the bankrupt court contains a finding of the same import, which strengthens the position that the corporation is estopped to set up the defence that the certificates are void. Riche v. Ashbury Ry. C. & I. Co., L. R. 9 Exch. 264.

Power to issue shares was possessed by the company, and hence the rule, that the holder takes nothing where the power is entirely wanting, does not apply. Ferguson v. Landram, 436;[2] Stace's Case, 4 Ch. App. 688. Cases arise, however, where the suit was against the perpetrators of the fraud, or against holders of the stock, with notice that it was fraudulently issued, or with knowledge of such facts and circumstances as legally put them upon inquiry, in which the rule is

different. Equity, in such a case, regards the property of the corporation as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue it in whosesoever possession it may be transferred, unless it has passed into the hands of a bona fide purchaser; and the rule is well settled that stockholders are not entitled to any share of the capital stock, or to any dividend of the profits, until all the debts of the corporation are paid. Railroad v. Howard, 7 Wall. (74 U. S.) 409.

Assignees in bankruptcy in such a case represent creditors as well as the bankrupt, and may disaffirm the contract, or retain what passed to the bankrupt and proceed for damages against the perpetrators of the fraud, or against subsequent transferees of the stock with notice that it was fraudulently issued, or with knowledge of such facts and circumstances as legally put him upon inquiry. Decided cases which assert that rule are quite numerous and decisive. Two or three cases of the kind deserve consideration, of which the following is, perhaps, the most important.

Money was owed to the corporation for a subscription to the capital stock, and the debtor and the officers of the company entered into an agreement to extinguish the stock debt, and to convert it into a debt for the loan of money. Bankruptcy of the corporation ensued, and the assignee claimed that the stock debt was due. Justice Miller gave the opinion, and, in replying to the argument that the assignee can assert no greater right than the bankrupt, said: "The assignee is the representative of creditors, as well as of the bankrupt. He is appointed by the creditors. The statute is full of authority to him to sue for and recover property, rights, and credits where the bankrupt could not have sustained the action, and to set aside as void transactions by which the bankrupt would be bound. * * * Though it be a doctrine of modern date, we think it now well established that the capital stock of a corporation is a trust fund for the benefit of the general creditors of the corporation." Sawyer v. Hoag, 17 Wall. [84 U. S.] 619. To the same effect also is the case of Upton v. Tribilcock, where the opinion was given by Justice Hunt. He decided that the original holder of stock in a corporation is liable for unpaid instalments of stock without an express promise to pay the amount, and that a contract between such a subscriber and the corporation or its agents, limiting the liability therefor, is void, both as to the creditors of the company and its assignee in bankruptcy; that representations by the agent of a corporation, as to the non-assessability of its stock beyond a certain percentage of its value, constitute no defence to the action against the holder of the stock to enforce payment of the entire amount subscribed, where the holder has failed to use due diligence to ascertain the truth or falsity of such representations. Upton v. Tribilcock, 91 U. S. 45. Due care and diligence was not exercised by the

_____

[2] [5 Bush. 230.]

purchaser in that case, although the proof was full to the point that he was legally put upon inquiry. Thomas v. Bartow, 48 N. Y. 193. Half a century before these cases were decided, Judge Story held that the capital stock of a corporation was a trust fund for the payment of the debts of the corporation, and that it might be followed into the hand of the stockholders or of any persons having notice of the trust attached to it. Wood v. Dummer [Case No. 17,944].

Trusts are enforced not only against those persons who are rightfully possessed of the trust property as trustees, but also against all persons who come into possession of the property bound by the trust and with notice of the same, and whoever comes so into possession is considered as bound, with respect to that special property, to the execution of the trust. Taylor v. Plumer, 3 Maule & S. 574; Adair v. Shaw, 1 Schouler & L. 262. Reported cases almost without number lay down the same rule, but those referred to will be sufficient to illustrate the principle. Nothing is alleged in the bill of complaint tending to show that the respondents were participants in the fraud, or that they had notice of the transaction, or knowledge of any facts or circumstance tending to put them upon inquiry; and if there were any such matters alleged in the bill of complaint it could not benefit the complainant, as it is settled law that in such a case the cause of action arose in favor of the complainant when the estate of the bankrupt corporation vested in him as the assignee in bankruptcy.

Where the charter of a bank contained a provision binding the individual property of its stockholders for the ultimate redemption of its bills, in proportion to the number of shares held by the stockholders respectively, the supreme court held that the liability of the stockholder arose when the bank refused or ceased to redeem, and became notoriously insolvent. Terry v. Tubman, 92 U. S. 156. Just the same question, with others, was presented to the supreme court in a subsequent case in which the court held—the chief justice giving the opinion—that the liability of the stockholders upon their unpaid subscriptions is that of debtors to the bank, and that all such balances passed to the assignee under the assignment, which, by the bankrupt act, is of all the property, estate, credits, and assets of the bankrupt, whether a corporation or an individual; and, for all that is shown in the record, the stockholders were liable to suit at any time for the recovery of the balance due from them as such stockholders. Kennedy v. Gibson, 8 Wall. [75 U. S.] 505; Com. v. President, etc., of Cochituate Bank, 3 Allen, 42; Baker v. President, etc., of Atlas Bank, 9 Metc. [Mass.] 182; Terry v. Anderson, 95 U. S. 632. Apply that rule to the case before the court and it follows that, even if the bill of complaint had charged that the respondents had notice of the fraud, or were put upon inquiry in that regard, it would not have benefited the complainant, as in that event his claim would have been barred by the two years' limitation of the bankrupt act. Bailey v. Glover, 21 Wall. [88 U. S.] 342.

Purchasers of stock, where it appears upon its face that it was only partially paid up, may be held liable to pay up the unpaid instalment; but the authorities to that effect have no application in this case. Webster v. Upton, 91 U. S. 65; Upton v. Hansbrough [Case No. 16,801]. Adjudged cases, in which it has been held that creditors or assignees in bankruptcy may enforce such payments when the corporation would be estopped to do so, are suits against original subscribers or transferees implicated in some way in the fraudulent transaction. Upton v. Tribilcock, 91 U. S. 45. Failure to use due diligence when put upon inquiry was the ground of the decision in that case. Oakes v. Turquand, L. R. 2 H. L. 325. Whatever remedy for the fraud the assignee had, it is evident he might have pursued at any time after he acquired title to the bankrupt's estate. Ex. parte Currie, 7 Law T. (N. S.) 486; Carling's Case, 1 Ch. Div. 124; 9 Ch. Div. 60; De Ruvigne's Case, 5 Ch. Div. 323.

Demurrer sustained. Bill of complaint dismissed.