. SKRAINKA *et al., Appellants,* v. ALLEN.

1. **Corporations**: EXECUTION AGAINST STOCKHOLDER: WHEN LIABILITY BECOMES FIXED. Section 13, Wagner's Statutes, page 291, provides as follows: "If any execution shall have been issued against the property or effects of a corporation, and if there cannot be found whereon to levy such execution, then such execution may be issued against any of the stockholders to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; provided, always, that no execution shall issue against any stockholder except upon an order from the court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after sufficient notice in writing to the person sought to be charged; and upon such motion, such court may order execution to issue accordingly." *Held* that the liability of the stockholder is measured by the number of shares held by him at the return of the execution, and not by the number which he held when the motion was filed.

2. **Foreign Statute Adopted Here**: CONSTRUCTION. Where the statute of another state or country is enacted here, the courts of this State will place the same construction on it as had been given to it,

at the time of its adoption here, by the courts of the foreign state or country.

3. **Unpaid Stock:** LIABILITY TO CREDITORS: MORTGAGE BONDS. "Where persons become stockholders of a corporation with the understanding that calls are not to exceed a certain per cent, and afterward calls are made in excess of that amount, to compensate for which second mortgage bonds are issued to these stockholders, they are liable to the creditors of the corporation for unpaid stock to the amount realized by the sale of the bonds." This ruling in *Skrainka v. Allen*, 7 Mo. App. 434, affirmed.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

This was a proceeding against defendant, Gerard B. Allen, by motion, under the statute, (1 Wag. Stat., p. 291, § 13,) as a stockholder of the Illinois & St. Louis Bridge Company.

*R. E. Rombauer* for appellants.

As to the time when the liability of the stockholder became fixed, see *Nixon v. Green*, 11 Ex. 550; *McClaren v. Franciscus*, 43 Mo. 453; *Miller v. Great Republic*, 50 Mo. 55. The opinion of Judge Dillon in *Baltimore Bridge Co. v. Illinois & St. Louis Bridge Co.*, conflicts with these cases, but the construction placed upon a state statute by an inferior federal court will not be entitled to preference here over the construction placed upon the same statute by the court of last resort of the state whose statute is under consideration.

*Glover & Shepley* for respondent.

*McClaren v. Franciscus*, 43 Mo. 452; *Miller v. Great Republic Ins. Co.*, 50 Mo. 55, and *Prov. Savings Ins. v. Jackson Place Skating Rink*, 52 Mo. 557, differ from this case in two essential particulars: 1st, The question at issue there was not at what time the liability attached, but whether

the stockholder could avoid the liability from being enforced against him by transferring his stock to a known insolvent person ; 2nd, All those cases were cases of double liability and were not cases where it was sought to make a stockholder pay unpaid calls upon his stock. And see *State Savings Ass'n v. Kellogg*, 63 Mo. 540 ; *Baltimore Bridge Co. v. Illinois & St. Louis Bridge Co.*, MS. opinion by Dillon, J.

HOUGH, C. J.—On the 12th day of November, 1875, plaintiffs recovered judgment against the Illinois & St. Louis Bridge Company for $10,420.21. Execution was issued on this judgment on November 29th, 1875, which was duly returned *nulla bona.*

On March 20th, 1878, a motion was filed by the plaintiffs, under the statute, for an execution against the defendant Allen, as a stockholder in said bridge company. At the date of the return of the execution against the bridge company, Allen held 741 shares of stock, at the par value of $100 per share, and at the time when the motion was filed against him, he had sold and transferred all of said stock but twenty-four shares. Two principal defenses were interposed. The first was, that all of the said 741 shares were fully paid for at the date of the return *nulla bona*; and the second was, that the defendant was, in any event, only liable on the shares held by him at the time the motion for execution against him was filed.

It appears from the record, that the authorized capital stock of the bridge company was $4,000,000, in shares of $100 each; that in the year 1875, $3,000,000 had been subscribed for, on which forty per cent had been paid in cash. First mortgage bonds to the amount of $4,000,000 were issued and directed to be sold under an agreement that $800,000 of the stock of the company should go with the bonds as a bonus. Of these bonds the stockholders took $1,500,000, and received $300,000 in stock. Of this stock, all of which was credited with a payment of forty per

cent, which had not been paid, the defendant received seventy-five shares. For this bonus of forty per cent on said seventy-five shares, the circuit court and the court of appeals properly held the defendant liable to the creditors of the corporation. On December 20th, 1871, the stockholders, being of opinion that the unpaid sixty per cent of the stock issued would be required to complete the bridge which the company had undertaken to construct, passed a resolution at a meeting held by them, providing in substance, that calls should be made on the stock from time to time, as money should be required, and that second mortgage bonds of the company should be delivered at their face value, to the stockholders, in an amount equal to the amount of the calls paid by such stockholders, not exceeding in the aggregate the sum of $2,000,000. The board of directors ratified the action of the stockholders, and in pursuance of this arrangement the defendant Allen received in bonds $20,612, from which he realized the sum of $15,904.59.

For this last sum, the circuit court and the court of appeals held the defendant liable as for unpaid stock. For the reasons given by the court of appeals, (7 Mo. App. 434,) we agree with that court in saying that there was no error in this ruling of which the defendant can complain. *Sawyer v. Hoag*, 17 Wall. 610; *Habershon's case*, 5 Eq. Law Rep. 289; *Hay's case*, 10 Chy. App. Law Rep. 600.

The only question remaining for determination is, whether the defendant is to be charged on the stock held by him at the date of the return of *nulla bona*, or only on that held by him when the motion was filed. The circuit court held the defendant liable to the extent of the unpaid stock held by him at the date of the return of *nulla bona*, and the court of appeals held him liable to the extent of the unpaid stock held by him when the motion was filed which related in point of time to the service of notice. The statute in force at the date of the *nulla bona* return, and when the motion was filed, is as follows: "If any

execution shall have been issued against the property or effects of a corporation, and if there cannot be found whereon to levy such execution, then such execution may be issued against any of the stockholders to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; provided, always, that no execution shall issue against any stockholder except upon an order of the court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after sufficient notice in writing to the persons sought to be charged; and upon such motion, such court may order execution to issue accordingly." Wag. Stat., 291, § 13.

That portion of the section which authorizes execution for an amount equal to the amount of stock owned by the shareholder, and known as the double liability clause, was annulled by a constitutional amendment adopted in 1870, leaving the stockholder liable simply for any amount unpaid on his stock. *Schricker v. Ridings*, 65 Mo. 208. The phraseology of the section quoted, however, remained unchanged until the revision of 1879.

By the eighth and ninth Victoria, chapter 16, section 36, it is provided that "if any execution either at law or in equity shall have been issued against the property or effects of the company, and if there cannot be found sufficient whereon to levy such execution, then such execution may be issued against any of the shareholders to the extent of their shares respectively in the capital of the company not then paid up." That portion of our statute requiring construction at our hands seems to have been taken almost literally from the English statute above quoted. It was first enacted in this State, in its present form, in 1865. In January, 1856, the English statute was construed in the case of *Nixon v. Green*, 11 Exch. 549. Alderson, B., in delivering the opinion of the court said: "The construction of the act is very plain. It says, that 'if any execution, etc., shall have issued against the property or

effects of the company,' which has been done in this case, ' and if there cannot be found sufficient whereon to levy such execution '—and that fact is ascertained the moment the sheriff has returned *nulla bona*—' then such execution may be issued against any of the shareholders to the extent of their shares respectively in the capital of the company not then paid up—that is, the persons who are shareholders at the time the execution against the property or effects of the company is found to be ineffectual. But in order that no injustice may be done, and that it may be ascertained who those persons are, notice must be given, so that the persons against whom proceedings are taken may have an opportunity of showing that they were not shareholders at the time of the return of *nulla bona*. The object of requiring notice is merely to do justice to the class who are sought to be charged as shareholders at the time of the return of *nulla bona*; any other construction would lead to an evasion of the act." On appeal to the Exchequer Chamber, this decision was affirmed. 3 H. & N. 686.

It is the settled practice of this court, where the statute of another state or country is enacted here, to place the same construction upon such statute, that it had at the time of its adoption received in the superior courts of the state or country from which it was taken. *Skouten v. Wood*, 57 Mo. 380. This rule would seem to give more than ordinary force to the English decision, which might ordinarily be regarded only as very persuasive authority.

Besides this, the case of *Nixon v. Green, supra*, was approvingly cited by this court in *McClaren v. Franciscus*, 43 Mo. 452. The question discussed in the case last cited was, whether the individual liability of the stockholder attached at the time the debt was contracted, or at the time the execution was sued out, and it was decided on the authority of *Nixon v. Green*, and other cases, that those persons owning stock at the time the execution was issued against the corporation, were alone liable under the section

of the statute above quoted, unless they had become such by a transfer in fraud of the rights of creditors, in which event the fraudulent transferrer would still be regarded as a stockholder. It is true that the precise question now presented was not discussed in that case, because on the facts of that case, it did not necessarily arise, but the rule there announced is an absolute and unqualified one and may well be taken to apply to all cases arising under the statute. In *Miller v. Great Republic Ins. Co.*, 50 Mo. 55, it was said, that "a creditor has no claim against a stockholder until he has exhausted his remedy against the company; or rather, his claim commences from the time he issues his execution against the company." In the case of *Griswold v. Seligman*, 72 Mo. 119, it was said *arguendo*, "under the terms of our statute no one is liable as a stockholder unless occupying that relation at the time of the issuance of the execution."

That this construction of the section under examination is the correct one, will be rendered more apparent, perhaps, when we consider the fact that said section is a substitute for a provision in the law of 1855, authorizing the officer having execution against a corporation, to levy the same upon the property of the stockholder after giving him forty-eight hours' notice of the debt or deficiency, in the same manner as if it had been issued against him individually, provided no corporate property could be found, and none was disclosed by the stockholder receiving such notice. R. S. 1855, 373, § 14. And a subsequent section of the same act required the person in charge of the books of any corporation, on demand of the officer having any execution against such corporation, to furnish such officer with the names, places of residence and amount of liability of the stockholders. § 16.

Notwithstanding the change made in the manner of obtaining execution against the stockholders, the section last cited has been continuously retained on the statute book since it was first enacted, and now appears as section

737 of the Revised Statutes.    So that, the officer having an execution against a corporation may still require the person in charge of its books to deliver to him the names of the stockholders and the amount of their liability as such, to the corporation.    This provision is unquestionably in the interest and for the benefit of the plaintiff in the execution, and is intended to furnish him with the information necessary to enable him to apply to the court for execution against the stockholders, and it certainly cannot be even plausibly contended that the shareholders could defeat the purpose of this provision, by transferring their shares to a solvent and innocent purchaser, the day after such information was given, and before notice of any motion for execution.

There was an obvious propriety in changing the law so as to require the judgment creditor to apply to the court for execution against the stockholder, instead of leaving that matter to the judgment and discretion of the officer having the execution, as was provided by the law of 1855, inasmuch as all the questions affecting the relations of the stockholder to the corporation and its creditors, can, as the law now stands, be investigated and determined before the execution is issued and the property of the stockholder is sold.    But the rule of liability remains the same.    The law evidently contemplates that the stockholders who were such at the time the officer fails to find corporate property to satisfy an execution in his hands, shall be liable to have execution issued against them personally for any amount remaining unpaid on their stock, and this liability is a fixed one.    True, no lien is created on the stock, but a personal liability is created which attaches to the stockholder, and not to the stock.    In the absence of any prohibitory statute, the stock may be transferred, but the liability of the stockholder cannot be transferred with it. A different rule would in many cases result in entirely defeating the claims of creditors.

In the present case, for example, the books of the

company, and the directors, as well as the stockholders, concur in saying that the stock held by the defendant is fully paid. And as between the defendant and the company, all the stockholders consenting, it would be fully paid, but not as to creditors. The stock is sold in open market, and the books of the company showing it to be fully paid, and the holder thereof so representing it, there is nothing to apprise an innocent purchaser that it is not fully paid, and nothing to put him upon inquiry. In such case it was held in *Keystone Bridge Co. v. McCluney*, 8 Mo. App. 496, and in *Foreman, Assignee v. Bigelow*, 4 Cliff. 508, that the innocent purchaser cannot be held liable either to the company or a creditor, and if the holder of the stock who transferred the same is not liable because he has transferred it, the result of the transfer is to defraud the creditor. *Vide* also Thompson on Liability of Stockholders, § 135.

We are fully convinced that it is within both the spirit and the letter of the statute to hold the stockholder subject to execution, who was such when the corporation failed to satisfy the execution against it. The corporation having failed to pay and the return of *nulla bona* being made, the then stockholders become personally liable to the creditor to the extent of their unpaid stock, and this liability remains although they may transfer their stock.

The judgment of the court of appeals will be reversed, and the judgment of the circuit court will be affirmed. The other judges concur.