AUGUSTUS KNIGHT v. D. M. FROST, Respondent, AND JESSE HOLLIDAY, Appellant.

November 20, 1883.

1. CORPORATIONS — STOCKHOLDERS — PROCEEDINGS BY MOTION — EXECUTIONS. — In a proceeding by motion against a stockholder it is sufficient if it be shown that execution issued against the corporation and that there was no property whereon to levy it, though the return of *nulla bona* on the execution be made before the return day.

2. —— NOTICE OF MOTION — PRACTICE. — A plaintiff having given notice of his motion against a stockholder, on a *nulla bona* return of the execution, that he causes a second execution to issue and gives a second notice is not necessarily fatal to his recovery on the first motion, he having dismissed his second motion.

APPEAL from the St. Louis Circuit Court, THAYER, J.
*Reversed and remanded.*

G. A. CASTLEMAN, for the appellant: All that is required of the creditor is to issue execution and to show that the corporation had no property. — *Turner* v. *Adams*, 46 Mo. 95; *Kent* v. *Curtis*, 4 Mo. App. 121, 128, 130; Thompson on Liab. Stock., sect. 320; *Marks* v. *Hardy*, 12 Mo. App. 595.

JOHN M. DICKSON and H. I. D'ARCY for the respondent: The decree is correct, as the statute obviously requires not

· only an execution, but the sheriff's action thereunder, without which action it would be " the shadow of a shade." — *Nixon* v. *Green*, 11 Exch. 549 ; *Skrainka* v. *Allen*, 76 Mo. 384 ; *Shermerhorn* v. *Conner*, 41 Mich. 374 ; *Jessups* v. *Carnegie*, 80 N. Y. 643–653. The second motion of defendant Holliday, and his action thereon, estopped him to retreat to the first motion, it having been solemnly abandoned. — *Ramage* v. *Clements*, 4 Bush (Ky.), 161 ; *Turner* v. *Davis*, 48 Conn. 397.

BAKEWELL, J., delivered the opinion of the court.

The statute provides (Rev. Stats., sect. 736) that: "If execution shall have been issued against any corporation, and there can not be found any property or effects whereon to levy the same, then such execution may be issued against any of the stockholders, to the extent of the amount of the unpaid balance of such stock by him or her owned; provided, always, that no execution shall issue against any stockholder, except upon an order of the court in which the action shall have been brought or instituted, made upon motion in open court, after sufficient notice in writing to the person sought to be charged."

Defendants Frost and Holliday are judgment creditors of the Butchers and Drovers' Bank; they both moved for execution against Knight, a stockholder of that bank. Knight paid into court the amount unpaid on his shares, and, on his petition, the court required the two judgment creditors to interplead for this sum. On hearing, there was a decree in favor of Frost.

The facts are admitted, and, so far as material, they are as follows : —

The interpleader, Holliday, caused execution to be issued on March 8, 1881, returnable to the April term, and the execution was returned on the next day *nulla bona*, by order of plaintiff's attorney. Holliday gave notice to the stockholder on March 16th. Frost caused his execution to be issued on

May 16, 1881, returnable to the June term. This execution was regularly returned *nulla bona*, on the first day of the June term; and Frost gave notice to the stockholder on June 6th, immediately after the return of his execution.

On the hearing, Holliday introduced in evidence a series of executions against the bank, to the April, June, October, and December terms, 1881, of the circuit court, all returned *nulla bona*. The trial judge found as a fact that the bank was shown to have no property subject to execution, at the time Holliday's execution was returned.

The statute does not, in terms, require a return of *nulla bona* upon the execution. Undoubtedly, the return of the sheriff will usually be the best evidence that the corporation has no goods. But it is not the only evidence. We held in *Marks* v. *Hardy* (12 Mo. App. 595), that, where execution had issued against the stockholder, though there was no positive return of *nulla bona* upon the execution, if the fact appears that there were no goods, there is sufficient basis for the motion.

We see no reason to depart from what was said in that case, that, "if the plaintiff, by any competent evidence satisfy the court of this condition, the law will be fulfilled." Execution must undoubtedly issue, because the statute expressly prescribes this; but the law does not say, "if the execution be returned *nulla bona*," but, "if there can not be found any property whereon to levy." Appellant brought himself clearly within the letter of the law; and, as we think, also, within its spirit. If, before the return day, the sheriff becomes satisfied, after due search and inquiry, that he can discover no property, and returns his writ at once, and before the regular day, it is held in many States, that such a return will support supplemental proceedings, under statutes requiring a return. Freem. Ex., sect. 399. A fraudulent and collusive return, made at the instigation of plaintiff, would, of course, be set aside on proper application. But, when the return is shown to be

in strict accordance with the fact, no reason appears why it should not be equally good, whether made by the sheriff *proprio motu* or at the direction of plaintiff. In *Skrainka* v. *Allen* (76 Mo. 389), the supreme court adopts the language of Baron Alderson as to this statute (which we adopted from England), that the fact that there are no goods "is ascertained the moment the sheriff has returned *nulla bona.*" But, neither the English nor the American court says, that the fact can only be ascertained by the return of the sheriff made of his own motion. There is no question, as is suggested by counsel for respondent, of any equitable dispensation from any positive requirement of the law. Equity is not in any way called upon to aid the execution of a statutory power; because, though the statute does say that the execution must issue, and that there must be no property of the corporation out of which it may be satisfied, it does not say that the fact that there are *nulla bona* of the corporation can be legally ascertained for the purpose of authorizing a recourse upon the stockholder, only by a return to that effect of the sheriff, made of his own motion, in the regular course of his duty.

The case, though not the same, derives illustration from those cases which are decided under statutes giving to a judgment creditor the right to proceed by *scire facias* against the sureties of the debtor, or to apply for equitable relief against the debtor. A debtor ought not to be harrassed by a suit in chancery where he has property that may be reached at law during the life of the execution; and when the plaintiff comes into chancery for relief, he must first have exhausted his legal remedy. Statutes giving this equitable relief, usually provide for a return of *nulla bona* upon the execution before the equitable relief can be had. But, even under these statutes, it is not uniformly held that the return must be made upon the return day of the execution. Nor is it held that a return before the day is an absolute nullity.

In New York, under the statutory provision that whenever an execution, issued upon a judgment at law, shall have been returned unsatisfied, in whole or in part, the plaintiff may file a bill of discovery, it was formerly held that the remedy could not be held exhausted so as to allow of the filing of a creditor's bill before the expiration of sixty days when the statute provided that the *fieri facias* was " returnable sixty days from the receipt thereof by the sheriff," although the execution had been actually returned before the return day ; and this was followed, as the undoubtedly true rule, in Michigan, Maine, and Massachusetts. *Cassiday* v. *Meachum*, 3 Paige Ch. 311 ; *Steward* v. *Stevens*, 1 Harr. Ch. 169 ; *Adams* v. *Commiskey*, 4 Cush. 420 ; *Roberts* v. *Knight*, 48 Me. 171. But, afterwards, when, by the New York code, the execution was made returnable " within sixty days after its receipt by the officer," it was held that the sheriff may return the execution at any time within sixty days, and that when actually returned by him, it is a consummated official act, and any other proceedings may be based thereon. — *Forbes* v. *Walker*, 25 N. Y. 430 ; *Tyler* v. *Willis*, 33 N. Y. 327. This interpretation of the language of the New York statute is contrary to that given to the same language in Massachusetts, where it is held (*Adams* v. *Commiskey*, *supra*), that the words, " within sixty days," as a direction to return an execution, mean, " at the end of sixty days." The supreme court of New York says, in *Tyler* v. *Willis* (*supra*) : " Where there is no collusion or fraud shown, and no intent proved, on the part of plaintiff or his attorney, to prevent a levy on the property of the debtor, there is no law that requires the sheriff to keep an execution sixty days. He may do so ; and if he can find property, he ought to make the amount out of the property, even if he requires sixty days for that purpose ; but, where the sheriff knows the debtor to have nothing, where he has, on previous executions, exhausted all the property of the debtor, and where he has returned such

executions unsatisfied, it would be idle to require him to retain such process in his hands for two months, for no other purpose than to prevent the plaintiff from resorting to other means of collecting this claim." In *Forbes* v. *Walker* (*supra*), the court of appeals says : "The request of plaintiff's attorney to the sheriff to return the execution sooner than sixty days, does not affect the question. It is his duty to enforce and collect the execution, to levy on the property of the judgment debtor, if he has any within his bailiwick. If he notoriously has no property liable to levy and sale on execution, the sheriff, as we have seen, may properly, at his risk, return the execution immediately upon its receipt. The request of the plaintiff or his attorney, can not affect or alter his duty, or change the force or validity of his official return. This is made upon his official responsibility, and must be so made, in all cases."

The learned author of a well known treatise on Executions (Freem. Ex., sect. 353) uses this language : "In New York, the rule has been established by frequent adjudications, that the officer need not keep his writ until the return day. "If he feels confident that the defendant has no property subject to execution, and is willing to assume the *onus* of establishing this fact, he may, before the return day, return the writ unsatisfied. Such a return, when made in good faith, is valid, and will support subsequent writs and proceedings, to the same extent as if it were made on the return day. The rule thus established in New York is in opposition to the majority of the authorities elsewhere." (At section 399, it is said, in the same treatise, that the weight of authority is with the New York case.) "The fact that the defendant has no property subject to the writ when it comes to the officer's hands is, it is claimed, no assurance that he will continue to have none until the return day. It is also insisted that the time given to return a writ is designed partly for the benefit of the defendant, in order that the officer may not be forced

to proceed with needless vigor. Hence, the courts of Michigan, Massachusetts, and Missouri have very decidedly pronounced against returns made before the return day, treating them, not only as premature, but as insufficient to support further proceedings resting upon them.   *   *   * We can not avoid a conviction that the doctrine of the New York cases is agreeable with reason, and conducive to justice. When it can be clearly shown, that the defendant has no assets subject to the writ, there is no reason why the plaintiff's other remedies should continue in abeyance until the return day. The plaintiff may wish to prosecute proceedings at law supplemental to execution, or he may desire to file a creditor's bill in equity. In either case, his success usually depends upon the promptness with which he can act. It is cruel to compel him to remain idle, waiting for the return day, and affording the defendant ample opportunities to perfect such measures as may best enable him to elude all subsequent proceedings."

In support of what is said as to the rulings in Missouri, Mr. Freeman cites only *Dillon* v. *Rash* (27 Mo. 243). That case is also cited by counsel for respondent, and urged upon our attention as conclusive in his favor. But we do not think it can be considered so. The case was this: Execution was issued on the judgment of a justice of the peace, and returned *nulla bona* before the return day; and, on the day on which it was returned, execution was issued on a transcript of the same judgment, filed in the circuit court clerk's office. The supreme court held that the latter execution should be quashed on motion. Judge Scott, in delivering the opinion of the court, says, that the proceeding has the appearance of a design to deprive defendant of an advantage secured to him by law, which is intended to show indulgence to the debtor. Regularly, an execution can not be returned before the return day. Defendant may have property before that time. The court holds, that a construction of the statute by which judgment may be had,

transcript filed, execution issued and returned, and execution awarded from the clerk's office and levied, all in one day, with a view to reach defendant's real estate, can not be in accordance with the mind of the legislature, and we think this is obvious ; but it by no means follows that the legislature intended by the statute under construction, that the judgment creditor of an insolvent corporation should wait until the return term of the execution before proceeding against the stockholder.   This might involve a delay of six months.   It may be for this reason, that the legislature abstains from mentioning the return of the execution.   And so, in Maine, notwithstanding it is there held, as we have seen, that, to authorize *scire facias* against sureties, or proceedings by creditor's bill, the execution must first be returned unsatisfied and that this can be done only at the return term, yet, under a statute of that state, which provides that, six months after return of an execution unsatisfied against a corporation, the plaintiff may require any stockholder to disclose attachable property of the corporation, it is held, that the return may be made before the return day, and whenever, within the life of the execution, the facts will warrant it.   *Lovegrove* v. *Brown*, 60 Me. 592.

In Kentucky, under a statute providing for a remedy by creditor's bill whenever the *fieri facias* " shall issue to the proper officer, and be returned, as to whole or any part thereof, in substance, that the defendant hath no effects in his bailiwick to satisfy the same," though the statute of executions provided that there should be not less than thirty, nor more than ninety days between the *teste* and return day of the execution, and the execution was returned *nulla bona* in two days, it was held that this return, though irregular, was not null and was sufficient to authorize the filing of a bill to reach the debtor's choses in action.   *Dana* v. *Banks*, 6 J. J. Marsh. 219.

But, whatever view may be adopted as to the question whether or no a return of *nulla bona* made before the return day ought, in an ordinary case, to support ulterior proceed-

ings, and however such a return may be treated as premature, we do not think that such a return can be treated as an abso- lute nullity. It is held, in a case in Maryland (*Turner* v. *Walker*, 3 G. & J. 385), that a return not made in term is void. But that was where the return of the *fieri facias* was made the basis of a *capias*. Where the return to the execution is to be followed by an order to take the body of the defend- ant it would be hard, indeed, not to hold it void, if so returned as to give the defendant no day in court to protect his rights. But, where the return is to be made the basis of ulterior proceedings against property only, and is made in good faith, and is in accordance with the fact as shown by other returns to other writs, no sufficient reason appears for holding it, under all circumstances and for all purposes, absolutely void. The statute we are considering requires that execution should be issued, and of course the execution should also be returned. The return of *nulla bona* would not be conclu- sive whether regularly made or not. *Marks* v. *Hardy* (12 Mo. App. 595), is no authority for the proposition that the remedy against the stockholder could be had before a return, or after a return, made before the return day of the execution, because, in that case, a return had actually been made which was quite regular; but the reasoning of that case, and what is said in it as quoted above, leaves the respondent here no standing-room.

*Skrainka* v. *Allen* (76 Mo. 384), decides that the stock- holder is to be charged on the stock held by him at the date of the return of *nulla bona*, and not only on that held by him at the time the motion was filed. This supposes a return. But it does not necessarily suppose a return at the regular return day of the execution. That case is based, so far as this point is concerned, upon the English case of *Nixon* v. *Brownlow*. The English stat- ute is the one under consideration in *Skrainka* v. *Allen*, and here, for we have adopted the statute from England word for word. In *Ilfracombe Railway Co.*

v. *Devon Railway Co.* (2 C. P. 15), Willes, J., says:
"I do not consider that Baron Alderson meant to say that
it is necessary that the return should have been filed."
This is a reference to the language of Alderson, B., cited by
our supreme court in *Skrainka* v. *Allen,* that the fact of
no effects "is ascertained the moment the sheriff has
returned *nulla bona.*" Willes, J., further says in the Ilfra-
combe Railway case just cited, that, even the return of
*nulla bona* is only *prima facie* evidence of no goods, and
that it must appear that reasonable efforts have been made
to discover property of the corporation.

The English case just referred to seems to be directly in
point. It decides that to entitle the judgment creditor to a
*scire facias* against a shareholder under the act, it is not
necessary that the sheriff's return to abortive writs should
have been actually filed. The writs had been returned,
according to the English practice, to the attorneys who
issued them. It is evident that there was no regular
return until the writs had been filed. Counsel who
showed cause against the application for a *scire facias*
stated in court, and filed affidavits, to the effect, that
search had been made, and no record had been made of the
execution against the corporation. It was argued that the
return operates nothing until filed, and that until filed,
there could be no action for false return against the sheriff.
It is evident from the whole proceeding, as reported, that the
sheriff had indorsed his return upon the writs which were in
court, but that the writs had not been returned. The irreg-
ularity in that case seems to be as great as that in the case
at bar. Here, as in that case, the return was made, in the
sense that the sheriff had indorsed it upon the writ; but the
writ had not been regularly returned in the English case,
any more than in the one before us.

2. In the view that we take of the law, it now becomes
necessary to consider the effect of another and further state

of facts admitted upon the record. On May 18, 1881, Holliday caused to be issued a second execution against the bank upon his judgment. This execution was, in due course, returned *nulla bona* to the June term. On September 12, 1881, Holliday again gave notice to the stockholder, Knight, and filed a second motion based on this execution. It was in the interval between these two notices that Frost served upon Knight, and filed, his motion.

Does this filing of a second motion by Holliday work an abandonment of his first motion, and thus give precedence to Frost?

This second motion has been dismissed. The institution of the first proceeding furnished an excellent and sufficient ground that the second should abate. But we can see no reason why the filing of the second motion should work any prejudice to any precedence gained under the first,- which appellant did not abandon, but prosecuted it.

We are cited by respondent to two cases. But we think that neither of them sustain his position. It is held in *Ramage* v. *Cleménts* (4 Bush (Ky.), 161), that one who obtained a voidable judgment against a minor by whom no defence was made, and who caused the action to be again placed on the docket, and another summons issued, could not, after the defendant had appeared to the second action and defeated plaintiff in a trial, retreat from that defeat, disregard the last judgment, and enforce the previous one, which was voidable in its inception, and to which the second trial showed that plaintiff was not entitled.

The Connecticut case (*Turner* v. *Davis*, 48 Conn. 397) goes to this, that a plaintiff can not at the same time pursue two remedies inconsistent with each other, and that, having elected to treat B. as in possession of the premises in controversy, he can not, at the same time, proceed upon the inconsistent and contradictory theory that A., and not B., is in possession. When the essential facts on which

two different remedies proceed are repugnant, the common sense of the matter obviously is that they can not both be pursued at once. But this, we believe, has never been seriously disputed.

We are of opinion that, upon the admitted facts of the case before us, the decree should have been for appellant, and the judgment will be accordingly reversed, and the cause remanded to the circuit court with directions to enter a decree that the interpleader Holliday is entitled to the fund paid into court after deducting therefrom the costs of the proceeding up to the date of the appeal.

Judge LEWIS is absent. Judge THOMPSON concurs.