# Rupp's Appeal.

1. A., having entered into articles of agreement for the purchase of certain land, B., his wife, agreed to advance a large part of the purchase money, with the understanding that the conveyance of the land was to be made to her. The deed was, however, prepared with the name of A. as grantee, and, notwithstanding his wife's protest, A. declined to allow it to be altered, had it executed in that form and paid as part of the consideration, certain of his wife's money which she had intrusted to him. The evidence showed that at the time of this transaction, A. was extremely irritable and contrary, owing to a stroke of paralysis from which he was suffering. Subsequently, A. made and delivered to B. a promissory note for that amount of her money which he had used in the purchase of the land. *Held*, that the above facts were sufficient to raise a resulting trust for the benefit of B. to the extent of the money contributed by her to the purchase of the land.

2. In the above case, A. afterward died and the real estate in question was sold by his administrator under a decree of the Orphans'

Court to a *bonâ fide* purchaser ignorant of the circumstances above detailed,—*Held*, that all the interest both of A. and of B. passed by the sale, and that B. was entitled to claim from the proceeds as against A.'s creditors such proportionate part thereof as the amount originally contributed by her bore to the whole purchase money paid by A. for the land.

May 10, 1882.  Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Appeal from the Orphans' Court of *Cumberland county :* Of July Term, 1882, No. 9.

Appeal of John C. Rupp, trustee of Henry Rife, a lunatic, from a decree of the Orphans' Court of Cumberland county, distributing the proceeds of certain real estate sold under an order of said court by the administrator of Joseph Bomberger, deceased, for the payment of debts.

Before the auditor, appointed to report distribution (Joseph G. Vale, Esq.), the contestants were John C. Rupp, trustee of Rife, a judgment creditor of Joseph Bomberger, Samuel Crist, a judgment creditor, and Maria Bomberger, decedent's widow. The latter claimed on the ground that when her husband acquired the legal title to the land, he paid $1,500 of the consideration ($2,000) with her money, belonging to her separate estate, whereby a trust in the property resulted to her to the extent of said $1,500.

The facts which appeared before the auditor were as follows :

Some months prior to April of 1878, Charles Sherman, by articles of agreement, sold this land to Joseph Bomberger for $2,000, and Esquire Leas, having been employed to write the deed, Bomberger and his wife and Sherman met at the Squire's office on the 8th of April 1878, Bomberger having in his possession $1,500 of his wife's money, which she, on the day before that, had received on account of her share of her mother's estate. The deed had already been prepared by Esquire Leas, so as to convey the title to Bomberger, as called for by the agreement with Sherman ; but Mrs. Bomberger objected to this and wanted the conveyance to be made to her, giving as a reason that she was furnishing the greater part of the money to pay for the property. Bomberger, however, would not allow the change to be made, and, after some delay caused by this disagreement, the deed, as Esquire Leas had prepared it, was executed and delivered to Bomberger, who then paid the consideration money with his wife's $1,500, and $500 of other money, which he at that time got through Esquire Leas from Henry Rife. Previous to this day, Rife had promised Bomberger a loan of $1,000, on judgment security, and left the money with Leas to be handed over to Bomberger, which Leas did as soon as the deed was executed, taking for Rife therefor a judgment from Bom-

berger, and this became the first judgment lien on the land after the conveyance. Before paying Rife's money over to Bomberger, Leas knew that a part of the purchase money for the land was furnished by Mrs. Bomberger, and that she on that account asked to have the land conveyed to her, but, when her husband refused to allow this to be done, he (Leas) suggested that if she did not get the deed she ought to have a judgment for her money, or something to show that it was not a gift to her husband. Some days subsequent to the execution and delivery of the deed, Bomberger and his wife came back to the office of Esquire Leas, and Bomberger gave his wife a promissory note for $1,500, which Leas drew up for them.

Bomberger subsequently borrowed $150 from Samuel Crist, for which he gave him a judgment note, entered up August 27th, 1878, of which transaction Mrs. Bomberger had notice.

Joseph Bomberger died intestate October 24th 1879, and upon petition of his administrator, the court granted an order for the sale of his real estate for the payment of debts. The property in question was sold for $1,241.51 to one Firestone, who had no notice of the foregoing facts.

The auditor reported, as matter of law, that there was a resulting trust in favor of the wife, Maria Bomberger, by which she acquired an equitable estate in the land; but that the Orphans' Court sale of the property sold only the estate and interest of Joseph Bomberger, the wife's interest not being subject to sale for the debts of the husband: Diehl's Appeal, 9 Casey 406; Kline's Appeal, 3 Wright 469. That the fund must, therefore, be distributed to the creditors of Joseph Bomberger according to their respective rights. That even if the resulting trust in favor of Mrs. Bomberger could attach to the fund for distribution, there was such a commingling of the trust fund with the money of Joseph Bomberger as prevents its identification in the hands of the administrator: Thompson's Appeal, 10 Harris 16. That Mrs. Bomberger is to be treated in no other manner than as a creditor: Zeigler's Appeal, 3 Norris 342.

That under the Acts of April 11th 1848, April 22d, 1850, and April 15th 1851, Mrs. Bomberger is to be regarded *sui juris* as to her separate estate, and competent to take a promissory note in lieu of her interest in the land. And she having some days after the purchase of her property by her husband taken from him such a note, the use of the money by her husband must be regarded from that time as a loan to him. She has thus placed herself in the position of a common creditor, and the payment of her claim must be postponed until the judgment creditors of her husband are satisfied.

The auditor therefore awarded payment of the Rife judg-

ment in full, and awarded the balance of the fund to the Crist judgment.   Exceptions filed by Mrs. Bomberger to the auditor's report were sustained by the court, in the following opinion, filed by HERMAN, P. J.

" That a trust in the land resulted in Mrs. Bomberger from this transaction, is very clear.  The auditor has so decided, and I do not see how he could have done otherwise.   The wife supplied three-fourths of the purchase money, and wanted the conveyance made to her on that account.   This the husband refused to have done, but still used his wife's money in paying the consideration.  At the very time her money was being used in this way, she asserted her rights, and demanded to have her separate estate preserved and assured to her, and this she did not secretly, but openly and in the presence of the person whom Rife had intrusted with the duty of securing the loan he had promised the husband. What else was the wife to do ?    Must she have quarreled and struggled with her husband, and resorted to physical force to prevent the misappropriation or destruction of her estate ?   The law does not require this.   She having furnished the money and demanded that, on that account, the conveyance should be made to her, it was enough ; and as he, in the face of this, took the title in his own name, paying three-fourths of the consideration at the time with her money, a trust resulted to her, in the land, to the extent of the purchase money applied out of her separate estate.   If a husband purchases land with the separate estate of his wife in his hands and takes the title in his own name, a trust results to the wife :   Perry on Trusts, sec. 127 ; Kline's Appeal, 3 Wright 463 ; Raybold *v.* Raybold, 8 Harris 308 ; Fillman *v.* Divers, 7 Casey 429; Peiffer *v.* Lytle, 8 P. F. Smith 386.   He will hold the title in trust for his wife, and his giving to her subsequently a judgment for the money would not convert his situation of trustee into that of a mere debtor : Fillman *v.* Divers, supra.   In view of what occurred at the Squire's office, when Bomberger took the conveyance of the legal title in his own name, his giving the note afterward to his wife did not convert her into a mere common creditor of her husband.  Notwithstanding this, the trust in her own favor which arose at the inception of the title continued.

"But did the Orphans' Court sale discharge the trust ? There is no evidence at all that the purchaser had notice of the trust.   It is a universal rule, that if a man purchase property of a trustee, with notice of the trust, he shall be charged with the same trust, in respect to the property, as the trustee from whom he purchased.   And the opposite proposition is also true, that a purchaser for a valuable consideration without actual or constructive notice of the trust, holds the property discharged of the interest of the *cestui que trust.*   I am speaking, of course,

of the acquisition of the legal title. Nothing is clearer than that a purchaser for a valuable consideration, without notice of a prior equitable right, obtaining the legal estate at the time of his purchase, is entitled to priority in equity as well as at law, according to the well-known maxim, that where equities are equal the law shall prevail: Perry on Trusts, sections 217 and 218. As has been seen, there is no evidence to show that this purchaser had any notice of the trust. The presumption is that he purchased without notice, and being therefore a purchaser of a legal title without notice of the trust, and for a valuable consideration, he took the land discharged of the trust, and now the *cestue que trust* must come in on the fund or lose all. In Kline's Appeal, the Orphans' Court sale did not discharge the land of the trust, if any resulted to Mrs. Kline, for the very reason that the purchaser had notice of the alleged trust—not only did he have notice of the trust, but asked to have the sale confirmed. There were also a mortgage lien and a purchase-money judgment against the land. The closing sentence in the opinion delivered by STRONG, Justice, is in these words: 'Moreover, the purchaser asks to have the sale confirmed, and the mortgagee and judgment creditor have rights superior even to the equity of the appellant, if she has any.' The land being discharged of the trust by the administrators' sale, Mrs. Bomberger may come in on the fund. Say the authorities, the *cestui que trust*, may proceed against the land or the fund derived from the sale of the legal title: 2 Story's Equity, sec. 1262; Perry on Trusts, sec. 128; but as the land is now discharged of the trust her only resource is to the fund derived from the sale.

"But then, the trust resulting in favor of Mrs. Bomberger was in such part only of the land as was paid for with her money, and as three-fourths of the consideration was paid with her money, and one-fourth by the husband with money of his own, which he had borrowed from Rife, she can take no more than three-fourths of the substituted fund. The other fourth is subject to the judgment liens entered against the husband.

"It follows that the auditor erred in the distribution of the fund derived from the sale of the six-acre tract of land. Three-fourths of this fund should be awarded to Maria Bomberger, and the remaining one-fourth to the plaintiff in the Rife judgment.

"And now, March 30, 1882, the auditor's report is recommitted to the same auditor, with instructions that he modify and correct the scheme of distribution in accordance with the foregoing opinion, and make report thereof."

The auditor, in his amended report, reported a decree in accordance with the foregoing opinion, which was confirmed by

the court, whereupon John C. Rupp, trustee for Henry Rife, took this appeal, assigning for error the said decree.

*Joseph Ritner*, for the appellant.—If the doctrine of resulting trusts can be sustained to the extent decided in the court below, the records will no longer furnish to purchasers and judgment creditors the security that it has heretofore been supposed they do under the acts of assembly and decisions of this court. Such a resulting trust may lie dormant for an indefinite time, and until the death of the husband and the settlement of his estate in the Orphans' Court ; then if the widow can prove that she furnished purchase money of land purchased by the husband in his own name, on which he obtained credit, his title and the security of his judgment creditors will be wiped out in her favor. Such is not the law. Much less can the widow follow the alleged resulting trust into the proceeds of the land after a sale for the payment of the husband's debts. The interest of the husband in the land produced the fund for distribution, and if the wife had any title, it remains in the land: Fillman *v.* Divers, 7 Cas. 429 ; Kline's Appeal, 3 Wr. 463 ; Diehl's Appeal, 9 Cas. 406. The doctrine contended for cannot be pushed to the extent of holding that where a wife furnishes a part only of the purchase money, she may pursue the fund to the extent of such contribution—especially where the land sells for but a fraction of its cost : Peiffer *v.* Lytle, 8 P. F. S. 386 ; Farmers' & Mechanics' Bank *v.* King, 7 P. F. S. 202 ; Pierce *v.* McKeehan, 3 W. & S. 280.

*John Hays*, for the appellee.—The facts created a resulting trust in favor of Mrs. Bomberger, which trust attached to the fund for distribution, the purchaser being without notice : Shuman's Appeal, 3 Cas. 64 ; Bank *v.* King, 7 P. F. S. 202 ; Thompson's Appeal, 10 Harris 16 ; 2 Story Eq. Jur. § 1262. Judgment creditors are not purchasers, nor are they protected by the recording acts : Cover *v.* Black, 1 Barr 493 ; Shryock *v.* Waggoner, 4 Cas. 432 ; Sheetz *v.* Marks, 2 Pearson, 303.

Mr. Justice GORDON delivered the opinion of the court, May 22d 1882.

To the able opinion of the learned judge of the court below little either of force or importance can be added. From the testimony of Sherman and Leas, nothing can be more clear than that Mrs. Bomberger advanced her own money on the purchase from Sherman, and that, under the express arrangement that the deed was to be made to her. Not only was this her previous understanding and settled determination, but at the

very time of the delivery of that deed, she insisted upon having it so executed, and never voluntarily agreed to anything else. But what could she do? Her husband had obtained the possession. of her money; money that had been but the evening before paid over to her by her brother, from her mother's estate, and thus paid for the express purpose of investing it in this land; the justice had already drawn the deed in his name, and he, the husband, peremptorily refused to permit it to be altered. Not only so, but he refused, not indeed on her suggestion, but on that of the justice, even to secure her by a judgment note. If this was a loan by Mrs. Bomberger to her husband, it was a forced one; one to which she never assented, and the note, afterward given to, and accepted by her, could not, by implication, bind her to that which was, in no sense, her voluntary contract. In all this she was powerless to accomplish her own purpose, and she was compelled to succumb to the will of her husband. Nor was that husband, at this time, if we believe the evidence, at all fit to transact business for himself, much less to direct and control that of his wife. Charles Sherman says: "The only reason I can give for the deed not being made in her name, was that Joseph Bomberger was a little contrary. I did not consider he was in his right mind; he had a stroke."

We have here, then, every element which is necessary to constitute a resulting trust. Mrs. Bomberger's money is taken and invested in land, the deed to which was to have been made to her, but which, in fact, and without her consent, was made to her husband. We think this case in all its phases is covered by that of Fillman *v.* Divers, 7 Ca. 429, in which it was said by Mr. Justice STRONG, "if it was the wife's money which paid for the lot, and if, in addition to this, this money was obtained by the husband on condition that the deed should be taken in the wife's name, as the evidence would seem to show, the law, as it was before 1848, regarded the husband as a trustee for the wife. Nor did the fact of his giving a note for the money, and subsequently a judgment, convert his situation as trustee into that of a mere debtor."

But it is objected that the sale under the order of the Orphans' Court could operate only upon the interest of Bomberger; that by it nothing more than his right in the land was conveyed, hence, her equities remained undisturbed, and the money now for distribution, belongs to the estate. Had such been the only effect of the sale, this exception to the ruling of the court would be well taken, for the case would then fall within Kline's Ap., 3 Wr. 463; but, unfortunately for this position, such is not the fact; the purchaser, having no notice of Mrs. Bomberger's equity, took the title divested of that equity. The sale was of the property as unincumbered, and the money

[Oyster *v.* Oyster.]

raised by it now stands in its place, and as it can be directly and certainly divided and apportioned among the owners thereof, so must it be divided and apportioned : Thompson's Ap. 10 Har. 16.

This case is, in principle, supported by Diehl's Ap., 9 Ca. 406. A decedent had, in his lifetime, by articles of agreement, contracted for a tract of land on which he had paid, at the time of his death, about one-third of the purchase money. An order was made by the Orphans' Court for. the sale of this property for the payment of the debts of the estate of the decedent, and it was agreed between the vendor and administrator that the sale should convey the whole title, and under this arrangement the sale was made. Held, that the administrator could be charged only with the amount for which the land sold after deducting therefrom the purchase money due the vendor.

In the case in hand, the Orphans' Court sale passed to the purchaser, not only the estate of the trustee, but also that of the cestui que trust, and following the rule as above stated, of the proceeds thus raised the creditors of the deceased trustee are entitled to but so much as came from his estate, and the balance belongs to Mrs. Bomberger, the cestui que use.

The appeal is dismissed, and the decree affirmed at the costs of the appellant.

MERCUR, J. dissents, as the facts do not justify the application of the law.