## Thaddeus Stevens's Estate.     Appeal of J. M. Wiestling, Admr. of Alanson Stevens, dec'd.

[Marked to be reported.]

*Statute of limitations—Promissory note—Payment—Trust.*

A ward, after he became of age, executed a power of attorney by which he authorized his uncle to settle with his guardian and receipt for the money due him. The uncle received the money from the guardian, and subsequently settled with his nephew, giving him a small amount in cash, and a note payable on demand for the balance. Twenty-eight years after the date of the note, and after uncle, nephew and all parties having knowledge of the transaction were dead, the administrator of the nephew presented the note for payment to the executor of the uncle. No pre-

vious demand had been made for its payment. *Held*, (1) that the note was barred by the statute of limitations; (2) that, after the settlement between nephew and uncle, the trust relation between them ceased, and they became merely debtor and creditor.

Argued May 16, 1894. Appeal, No. 351, Jan. T., 1894, by a creditor, from decree of O. C. Lancaster Co., dismissing exceptions to report of auditors. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Exceptions to auditors' report.

The auditors, Simon P. Eby, William Leaman and J. Hay Brown, Esqrs., after reviewing the facts of the giving of a plain promissory note by decedent to his nephew Alanson J. Stevens, July 12, 1858, on demand, which was the subject of the present claim, continued :

" After the death of Alanson J. Stevens, his brother, Thaddeus Stevens, had possession of the said promissory note, on which claim is now made, up to the time of his death, Nov. 1, 1874, and the said Thaddeus Stevens was the administrator of the estate of Alanson J. Stevens, deceased. After the death of the said Thaddeus Stevens, the said promissory note was in the possession of R. W. Shenk, administrator of the estate of said Thaddeus Stevens, deceased. After the death of the said R. W. Shenk, Sept. 26, 1880, the said promissory note came into the hands of William Leaman, where it remained until April 19, 1886, when it passed over to J. M. Wiestling, administrator of the estate of Alanson J. Stevens, deceased, by whom claim has been made upon it before the auditors. No demand was made for the payment of the said promissory note upon Hon. Thaddeus Stevens, during his lifetime, after the same was made and delivered, either by Alanson J. Stevens, while he was living, or by his legal representative, Thaddeus Stevens, administrator of the estate of Alanson J. Stevens, deceased. Hon. Thaddeus Stevens died Aug. 12, 1868, more than ten years after the date of the said promissory note. The said promissory note was made payable on demand, and, therefore, the statute of limitation began running from its date. The statute, consequently, has had full operation, and is an effectual bar to recovery, unless there has been a subsequent promise by Hon. Thaddeus Stevens, or an acknowledgment by

him of the debt, from which the legal inference of a promise to pay can be made.

"Simon Stevens was called as a witness.   He now resides in the city of New York, at No. 61 Broadway, and is an attorney at law.   He became acquainted with Hon. Thaddeus Stevens, and knew him well up to the day of his death.   He entered as a student at law in the office of Mr. Stevens, Jan. 1, 1845. He frequently saw Mr. Stevens in Washington, and visited him at his residence in that city.   He testifies that ' Mr. Stevens on several occasions, while speaking of Alanson and other family relations, expressed, surprise that the note had never been presented for payment.'   'He made inquiries for it once of Mr. Sweeney in my presence.   Mr. Stevens expressed himself then as believing that the note was lost when Alanson was killed.   The last time he spoke of it to me was about a month or two before he died, remarking substantially in these words : " Simon, you know all about this note ; that I hold the money in a fiduciary capacity ; and if it is ever presented you can explain that it must be paid to the legal holder." '

"These conversations were not held with either the 'legal holder ' or his agent, but with an entire stranger to the contract between the parties.   It was observed in Kyle v. Wells, 17 Pa. 286, that ' it is a mere perversion of the word " promise " to apply it to a declaration made to one who has no interest in or connection with the subject spoken of.'   ' A promise made to a stranger is a mere declaration of intention, which the promisor may change at pleasure.   To be binding upon him it ought to be made under circumstances which indicate an intention to pay the debt ; not a mere loose declaration : ' McKinley v. Snyder, 78 Pa. 497.   The statements, or declarations, made by Mr. Stevens to Simon Stevens, have no legal effect.   They were not made under the circumstances required by law to constitute a promise to pay, or an acknowledgment consistent with a promise to pay, or from which the legal inference of a promise to pay could be made.

"Simon Stevens continues : ' On one occasion, when Mr. Dickey was present, Mr. Stevens turned around to Thad, whom he called Major, and said : " Major, it is strange that that note of mine never turned up."   The Major replied : " May be the Rebs may present it to you." '   The Major was his nephew,

Thaddeus Stevens, Jr., who was the administrator of the estate of Alanson J. Stevens, deceased. Granting that Hon. Thaddeus Stevens referred on this occasion to the promissory note made by himself to Alanson J. Stevens, the declaration has no legal value. It is not shown that Hon. Thaddeus Stevens knew that Thaddeus Stevens, Jr., was administrator of the estate of Alanson J. Stevens, deceased, and that as such he held the said promissory note. On the contrary, it is shown that he did not know that such was the fact. Simon Stevens testifies that the last time Mr. Stevens spoke to him about the promissory note in question, about a month or two before his death, he said: 'If it is ever presented you can explain that it must be paid to the-legal holder.' Here it is plainly apparent that Mr. Stevens recognized that it was possible that the said promissory note might have passed from the hands of Alanson J. Stevens for a consideration, and that he did not know who was then the 'legal holder.' If he had the anxiety to pay this note, which the testimony of Simon Stevens would show he had, and had he known that his nephew, Thaddeus Stevens, held it, as administrator of the estate of Alanson J. Stevens, deceased, the most obvious and natural course for him to pursue would be to pay such administrator and lift the note, and not give a direction to Simon Stevens to see to its post mortem payment to the 'legal holder.' It is certain that Thaddeus Stevens, Jr., in the conversation in which Mr. Stevens addressed him as Major, did not inform Mr. Stevens that he held the said promissory note as the administrator of the estate of Alanson J. Stevens, deceased, or make any demand at that time for its payment, for he answered his uncle in a jocular manner: 'May be the Rebs may present it to you.'

"Paxson, J., in McKinney v. Snyder, 497, remarks: 'In the Farmers' and Mechanics' Bank v. Wilson, 10 Watts, 261, it was held that an acknowledgment, such as will avoid the operation of the statute limiting the time within which an action may be brought for the recovery of lands, must be made to the owner, or his agent known as such.' Says Huston, J.: 'No loose conversations, no inferences from what was said many years ago, no expressions to neighbors or strangers to the title, will deprive a man of the protection of this most beneficial statute.' We may well apply by analogy this vigorous language to the present case.

" If Mr. Stevens, a month or two before his death, had promised to pay the said promissory note to Thaddeus Stevens, Jr., with knowledge that he was administrator of the estate of Alanson J. Stevens, deceased, and that he held the said promissory note, or had made an acknowledgment consistent with a promise to pay, and from which the legal inference of a promise to pay would be made under circumstances which indicated an actual intention to pay the debt; even if such were the facts of the case, the statute of limitation would be a complete bar to recovery.

" Hon. Thaddeus Stevens died Aug. 12, 1868, and letters testamentary were issued to his executors, Sept. 21, 1868. Thaddeus Stevens, Jr., who was administrator of the estate of Alanson J. Stevens, deceased, and who held the said promissory note as such administrator, died Nov. 1, 1874, more than six years after said letters testamentary were issued, without demanding payment. The statute had its full operation at the time of the death of Thaddeus Stevens, Jr. The attention of the executors of the will of Hon. Thaddeus Stevens, deceased, was not called to the existence of the said promissory note until the year 1884. J. M. Wiestling administered upon the estate of Alanson J. Stevens, deceased, on the 18th day of December, 1885, and formally presented the claim on the said promissory note at a meeting of the auditors, held June 24, 1887. At this last mentioned date, nearly nineteen years had elapsed since the death of Hon. Thaddeus Stevens. No evidence, showing a respite in the running of the statute, was produced. At the audit held in 1875—the auditors' report being presented Dec. 24, 1875—no claim was made upon the said promissory note.

" In Yorks's Appeal, 110 Pa. 69, it is held, PAXSON, J., delivering the opinion of the court, ' that the orphans' court has the power in a proper case to apply the statute by way of analogy, and that where no claim is made upon the executors for six years after the time they have taken out their letters testamentary, it is entirely proper to apply it.'

" The effort to show that Thaddeus Stevens held the fund as trustee is ineffectual. If Simon Stevens reports Mr. Stevens correctly as saying that he ' held the money in a fiduciary capacity,' Mr. Stevens must have used the phrase in some fig-

urative, and not in a legal sense. He was not an executor, administrator, guardian or trustee by testamentary or official appointment, or under any technical and continuing trust, which is not cognizable at law, but which falls within the peculiar and exclusive jurisdiction of chancery : Yorks's Appeal, 110 Pa. 79.

" On July 12, 1858, a relation of debtor and creditor was established between Thaddeus Stevens and Alanson J. Stevens, and no other exists.

" The statute of limitations is applied in bar of recovery upon the said promissory note of July 12, 1858, above described and copied, and the claim is disallowed."

Exceptions to the auditors' report were overruled, and a decree entered sustaining the report.

*Errors assigned* were in overruling exceptions, quoting them.

*A. C. Reinoehl*, for appellant.—The auditors erred when they treated the note as a promissory note for money loaned, when the evidence of Simon Stevens is clear that it never was loaned, but was held in trust : Rupp's Ap., 100 Pa. 537 ; Harrold v. Lane, 72 Pa. 270.

If appellant were seeking to recover on the note as a creditor, the argument of the auditors might have force. But the note is only evidence of a trust and is supported by evidence of a trust : Lewin on Trusts, 1200.

The statute of limitations will not apply : Lewin on Trusts, 1170, 1187; Brice's Ap., 54 Pa. 472 ; Yorks's Ap., 110 Pa. 79.

*Geo. M. Kline*, for appellee.

OPINION BY MR. JUSTICE WILLIAMS, Oct. 1, 1894:

This appeal presents but one question. The facts upon which it is raised are free from difficulty. Alanson Stevens was the son of Morrill Stevens of Vermont, who was a brother of the late Hon. Thaddeus Stevens of Pennsylvania. After the death of his brother in Vermont, Thaddeus Stevens brought his two sons to Pennsylvania and treated them with the same kindness and liberality that he would have been expected to show them if they had been his own sons. Their interests in their father's estate had remained in the hands of their guardian in

their native state until after they came of age, when they executed a power of attorney to their uncle to settle with their guardian and receipt for the money due them.    By virtue of this power of attorney Thaddeus Stevens received two thousand four hundred and sixty-one dollars belonging to Alanson.    The power of attorney bore date on June 30, 1858.    On the 12th of July following the decedent settled with Alanson and gave him his note for two thousand four hundred dollars of the money he had received from Kittridge, the guardian.

This terminated the relation of principal and agent, or attorney and client, and established that of debtor and creditor. In the meantime Alanson had been made the agent of his uncle, and was employed at a salary as superintendent of the Caledonia Iron Works located in Franklin county.    In 1859 he married, but continued to reside at, and take charge of, the Iron Works.    In 1861 or 1862 he enlisted in the army of the Union, in the artillery branch of the service, with a battery he had been instrumental in organizing.    In 1863, while in the discharge of his duty, he was killed at the battle of Chickamauga.    After his death his brother found the note of Thaddeus Stevens for twenty-four hundred dollars among other papers in his army trunk.    This brother became the administrator of Alanson Stevens's estate, which he settled; but he never made any use of, or claim upon, the note, and did not treat it as part of his brother's assets.    He held it for about eleven years, and died in 1874.    His estate was administered by R. W. Shenk, who found the note among his papers, took possession of it, and placed it in the hands of William Leaman, Esq., who retained it after Shenk's death in 1880.    In 1886 Wiestling, the appellant, who had been appointed administrator de bonis non of Alanson Stevens for this purpose, obtained possession of it and demanded payment from the executors of Thaddeus Stevens, the maker.    The note was given in July, 1858, payable on demand.    The maker died in 1868. No demand or claim of any sort was made upon him in his lifetime, and no payment upon or acknowledgment of it was ever made by him.    The payee held the note for over five years before his death.    His administrator held it for more than eleven years.    Shenk and Leaman held it for twelve years more.    Twenty-eight years after its date the first demand is

made for payment, and that comes after the death of all the parties who were in a position to know about the transaction or to explain its nonpresentment. Under such circumstances the statute of limitations is a conclusive answer to the appellant's demand.

But it is urged that the statute ought not to apply because the maker of the note was a trustee for the payee. We are unable to find any evidence of the existence of a trust relation. Kittridge, the guardian, was a trustee, but his ward had grown out of his minority and called upon him, by his attorney in fact, for settlement. After the settlement with his guardian he next settled with his attorney in fact, received sixty-one dollars in cash, and a note payable on demand for twenty-four hundred dollars in full for the money received by him. The relation of guardian and ward was terminated by the act of the agent of Alanson Stevens. The relation of principal and agent was then closed by his own act in making settlement in full with his agent. The note created a new relation, that of debtor and creditor, and, so far as the evidence enables us to judge, that was the only relation thereafter existing between them. One witness testifies that the decedent once spoke of the note as representing money held by him in a fiduciary character. If this was so, it is clear that the word fiduciary must have been used in a popular and not in a legal sense, for there is no single fact in the case that points to the existence of any trust relation between the maker and the payee of the note. Rupp's Appeal, 100 Pa. 537, and kindred authorities are not applicable on the facts of this case.

The decree appealed from was properly entered and is now affirmed.