**REICH v. VAN DYKE.**

**No. 7135.**

Circuit Court of Appeals, Third Circuit.

Nov. 13, 1939.

Irving L. Epstein and Henry S. Sahm, both of Scranton, for appellant.

Harry Needle, Joseph S. Needle, and Ralph P. Needle, all of Scranton, Pa., for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Statutes of limitation generally suffer from that simplification which leads to complexity. A writer in the Pennsylvania Law Review puts that feeling into these words:

"* * * The statute of limitations, while theoretically definite and clear in its language, provides numerous difficulties in its application to the most ordinary commercial problems. * * * As a fundamental principle, it may be said that the statute of limitations does not begin to run until a cause of action has accrued. But just when the cause of action has accrued is usually the subject of dispute, for upon the answer to this question is suspended practically every case concerning the statute of limitations. * * *" 76 University of Pennsylvania Law Review 87, 87–88.

The one here applicable, McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 49 L. Ed. 702, 3 Ann.Cas. 500, that of Pennsylvania, is no exception. In fact it carries its simplification to an unusual length. It was adopted in 1713 and is in the archaic language of an even earlier statute, that of 21 Jac. 1c. 16, 1623, and reads:

"actions of debt * * * shall be commenced * * * within six years next after the cause of such actions". 12 Purdon's Pa.Stat.Ann. § 31.

■ The Pennsylvania courts have been constrained to expand this extreme simplicity and give the word "cause" the same meaning that is explicit in the analogous enactments of most other states, cf. for instance, 1 Revised Statutes of New Jersey (1937) 2:24–1, N.J.S.A. 2:24–1. So they call it the point of time when the action "accrues" or "arises", i. e., when "there is an existing right to sue forthwith", N. Y. & Pa. R. Co. v. N..Y. C. R. Co., 300 Pa. 242, 246, 150 A. 480; accord, 1 Wood, Limitation of Actions, sec. 122(a) 684, 685; 30 Harvard Law Review 767 (note). California, by way of contrast, avoids complexity by its more detailed classification and has a statute (sec. 359 of its Code of Civil Procedure) which prescribes for actions in "statutory liability" and dates the running from "three years after the * * * liability was created", Johnson v. Greene, 9 Cir., 88 F.2d 683; Coulter Dry Goods Co. v. Westerworth, 171 Cal. 500, 153 P. 939.

The same tendency to oversimplify may be thought to appear in the decisions applying this or a similarly worded statute to the exact facts presented by the case at bar. The only reported Federal cases are those of the learned District Court below, Van Dyke v. Reich, 27 F.Supp. 436, and of the United States Court of Appeals for the District of Columbia, Strasburger v. Schram, 68 App.D.C. 87, 93 F.2d 246. Besides these, there seems to be only one other decision, the case of White v. Liskovsky, 3 A.2d 123, 17 N.J.Misc. 8, in the Supreme Court (Circuit Judge) of New Jersey, also reported in note 3 under Limitation of Actions, 2 New Jersey Statutes Annotated 2:24–1, p. 7. For some reason, appellee does not cite this case, but cites a later Supreme Court (Circuit Judge) of New Jersey case, Howell v. Fogg, 7 A.2d 282, 17 N.J.Misc. 200, wherein the holding is dictum.

The circumstances presented are those which have been all too common in the past decade. The laws of the United States, 12 U.S.C.A. § 63 and § 64, enacted in an economically similar decade (1864) provide for the double liability of stockholders in national banks. This attempt to ensure good management has now been replaced by government insurance, 12 U.S. C.A. § 264. On December 15, 1932, the Comptroller of the Currency proceeded under the provisions of such law and notified the defendant-appellant of his obligation to pay "on or before January 23, 1933" the amount of the par value of his 5 shares of stock in the Liberty National Bank (of Dickson City, Pennsylvania), namely, the sum of $500. The tolerance of the Comptroller, acting through his arm, the bank's receiver, extended further than merely the giving of a grace period for original compliance. He permitted those who showed a willing spirit to pay in quarterly instalments up to and until April 23, 1933, Record, p. 7. To requite this kindness and in exploitation of the receiver's failure to sue until January 16, 1939, defendant-appellant pleaded the statute of limitations.

We feel a faint stirring of surprise at two things about all this. First, the receiver passed the Christmas holidays in creating a subject matter for our decision instead of in collecting the money to pay his depositors. Second, appellant's counsel must have a nice scientific interest in the law, otherwise he would not spend more than the amount of any possible judgment against his client in insisting on our resolution of the said subject matter.

■ The quite, as we think, easy answer to the question presented has been confused by a more difficult and yet cognate problem. The spirit of and the reason for statutes of limitation is plain and has been often stated:

"It is for the public benefit that claims be litigated while witnesses are available and memories fresh so that perjury and fraud may be reduced to a minimum. It is also desirable to put an end to possible litigation". 30 Columbia Law Review 383, 384.

Where the original acts are at one time and the final one at an indefinite later time, legal consistency may have to yield to legal expediency, 6 Williston on Contracts, sec. 2040. A cause of action which does not technically "arise" may still stem from facts long since forgotten.

A notable instance of such a dilemma occurs in the law of promissory notes payable on demand. Obviously the cause does not arise until the demand. Yet in the interest of expedient operation of a vague statute, the courts now start the statute from the date of making on the theory that suit and therefore demand could have been brought (made) then, 6 Williston on Contracts sec. 2040, above cited, In re Stevens' Est., 164 Pa. 216, 30 A. 245; Valiant Co. v. Pleasonton & Pa. Co., 108 Pa.Super. 197,

164 A. 143. As the writer of the law review article quoted at the commencement of this opinion observes: "This reasoning, while based upon a fictitious presumption, finds forceful justification in the fact that business expediency demands that negotiable instruments be retired as soon as possible", 76 University of Pennsylvania Law Review 87, 88.

The official responsible for an insolvent bank under a double liability statute can act contemporaneously with the insolvency, or, on the other hand, he can take his time and so facilitate the disappearance of the evidence. Some courts say that the limitation period commences with the appointment of the receiver, Shearer v. Christy, 136 Minn. 111, 161 N.W. 498, whereas others declare for the assessment date, Bernheimer v. Converse, 206 U.S. 516, 27 S.Ct. 755, 51 L.Fd. 1163; Goss v. Carter, 5 Cir., 156 F. 746; Hale v. Cushman, 96 Me. 148, 51 A. 874; Mister v. Thomas, 122 Md. 445, 89 A. 844; Shipman v. Treadwell, 208 N.Y. 404, 102 N.E. 634; and see also, a similar construction of statutes making stockholders of insolvent corporations liable on unpaid subscriptions, Hawkins v. Glenn, 131 U.S. 319, 9 S.Ct. 739, 33 L.Ed. 184; Gillin v. Sawyer, 93 Me. 151, 44 A. 677. We agree with a writer in the Harvard Law Review that neither view is desirable:

■ "* * * On the one hand, the creditors should be protected; on the other, the stockholder should not have liability hanging over him indefinitely until the receiver may choose to get an assessment levied. It is the policy of the law to wind up insolvent estates speedily in the interest both of the creditor and of the stockholder. Under such a statute the receiver may bring proceedings against the stockholders as soon as the corporate assets have been so marshalled that the propriety of an assessment can be demonstrated to the court with fair certainty. Limitations should, therefore, begin to run as soon as this step might reasonably be accomplished". 30 Harvard Law Review 767. And see also, Guffey v. Gulf Production Co., D.C., W.D. Pa., 1926, 17 F.2d 926; 3 Cir., 1927, 17 F. 2d 930, 932.

■ It is in the cases which discuss those questions that we find the dicta which preceded the actual decisions here cited as precedents. The learned courts are addressing their minds to the difference or distinction, if any, between an insolvency and its possible statutory consequence, an assessment on stock. With that difference before them, they overlook and are thoughtless about the difference and distinction, as we think, between the date of such assessment's imposition and its time for payment. As we have intimated, zealous receivers would usually make any such difference and distinction quite academic. So the cases speak indiscriminately of the two dates. They are collected in the briefs, in 12 U.S.C.A. § 64, note 54, p. 187, and in Cowden v. Williams, 32 Ariz. 407, 259 P. 670, 55 A.L.R. 1059, 1068, 1089. The same confusion appears in the text books. The assessment date dictum is stated as law by two writers, 2 Wood, Limitation of Actions, sec. 149, p. 780, note 80; 1 Zollman, Banks & Banking, § 516, p. 402. Other and perhaps more meticulous authors quote the due date dictum, 1 Morse, Banks & Banking, sec. 678, pp. 1411, 1412; 7 Am.Jur. sec. 147, pp. 115, 116. There are, however, two lines of authorities so analogous as to completely persuade us. Appellee's counsel either did not find them or found them unconvincing because he does not cite them.

It must be remembered that we envisage a factual situation which imports two possibly relevant dates, (1) a date where a demand, call, or assessment (defined as to "determine by rules of law a sum to be paid", 6 C.J.S., Assess, p. 1021) is made on one date, (2) to be paid on another and later date. This occurs first, where the original obligation to pay is in just those terms. And second, as one might expect, where the demand of assessment is quasi in invitum and so an unpleasant surprise to the person assessed. We say quasi in invitum because the liabilities arise from the ownership of property. In the case of assessment for taxes the amount only is the bad news whereas in a bank stock assessment the whole thing comes as a shock. Because of this, the assessing agency generally and properly gives a grace period.

The text writers phrase the rule which governs these two sets of circumstances in this language.

As to notes payable a certain time after demand:

"* * * Where, moreover, an obligation is payable a certain time after demand, the Statute does not begin to run until demand has been made and the specified time thereafter has elapsed". 6 Williston on

Contracts sec. 2040, p. 5716; and see also, 29 Columbia Law Review 219.

As to assessments for taxes:

"Where an assessment or tax is laid and by ordinance or statute a certain time is fixed within which it may be paid, the person against whom it is laid has the whole of such period within which to pay it, and the statute does not begin to run thereon until such time has expired". 2 Wood, Limitation of Actions, sec. 164, p. 797.

Their conclusions are amply supported by the authorities cited in the notes to the above quoted texts. The construction is even more sensible in the case at bar. The difference in time is invariably too short to affect evidence or keep alive litigation. The average layman (as mayhap the receiver here) will not be misled by the legal insignificance of a date that seems practically all important to him.

The judgment of the District Court is affirmed.