PATRICK H. GILLIN, and another, Assignees in Insolvency,

*vs.*

CHARLES H. SAWYER.

Penobscot.　　Opinion July 22, 1899.

| 93 | 151 |
| 96 | 151 |
| 93 | 151 |
| 100 | 235 |
| 93 | 151 |
| 104 | 147 |

*Corporation. Stock. Insolvency. Action. Limitations. R. S., c. 46, §§ 45, 46, 47.*

1. When a corporation issues shares of its capital stock in exchange for property delivered to it by the subscriber in full payment therefor, and no fraud is shown, the corporation cannot question the sufficiency of the consideration thus paid for the shares, at least without returning the property.

2. If the corporation is afterwards upon proper proceedings adjudged insolvent in a court of insolvency and assignees are appointed by that court to administer its estate, such assignees cannot, in behalf of the corporation or its stockholders nor under the insolvency statutes alone, maintain an action against a subscriber to recover the difference between the actual and agreed value of the property paid by him for shares where no fraud is shown.

3. Such assignees, however, in behalf of the creditors of the corporation and under the principles expressed and enacted in the statute R. S., c. 46, §§ 45, 46 and 47, can go behind even the honest judgment of the parties as to the value of property paid in for shares, and can recover of the subscriber the difference between the actual value and the agreed value.

4.  The liability of the stockholder to thus answer to the creditors of the corporation, or their representatives, for the full actual par value of his shares for which the corporation itself has without fraud accepted property in full payment, is a secondary liability only, analogous to that of a guarantor, and arising only after the default of the corporation has been judicially ascertained.

5.  As an individual creditor has no right of action to enforce this secondary liability until he has obtained a judgment against the corporation showing a judicial determination of the fact and amount of the default of the corporation to him,—so assignees in insolvency have no right of action until the fact and amount of the default of the corporation to creditors generally is likewise judicially determined in the insolvency court.

6.  When the assignees have settled, and the insolvency court has approved, an account showing a complete administration of the assets of the corporation by their reduction to cash and showing the net amount available for the payment of claims,—then, if claims have been proved and allowed in excess of that net amount, the fact and amount of the default of the corporation, as to such creditors, at least, is ipso facto judicially determined. The right of action to enforce the secondary liability of the stockholder then first accrues to the assignees in behalf of creditors.

7.  This secondary liability of the stockholder is limited to the deficiency of the assets, and hence the amount, as well as the existence of a deficiency of the assets, must be shown to authorize a recovery against a stockholder upon his secondary liability. An admission by the stockholder merely of some deficiency of assets does not relieve the assignees from showing the amount of the deficiency as judicially determined in the proper court.

ON MOTION BY DEFENDANT.

This was an action on the case brought by the assignees in insolvency of the Bangor Pulp & Paper Company to recover the value of fifty shares of stock of the insolvent company, which they allege the defendant either agreed to take or did take, soon after the organization of the corporation, and for which he has never paid.

The Bangor Pulp & Paper Company was organized under the laws of the State of Maine, January 14, 1892, with a capital stock of one hundred and fifty thousand dollars, the par value of each share being one hundred dollars; which capital stock was afterwards increased to three hundred thousand dollars. October first, following its organization, the company leased the plant of the Orono Pulp & Paper Company, located at Orono, which it operated until April, 1896. June 4th, 1896, upon a petition filed by

its creditors, the company was declared insolvent, and on the twenty-fifth day of June, the plaintiffs were duly appointed assignees of the insolvent corporation.

The circumstances under which the stock in question was issued appear as follows: December 7, 1891, the Orono Pulp & Paper Company entered into an agreement with H. S. Rice and B. F. Hosford in which they agreed, upon completion of a paper mill to be thereafter completed and ready for operation, to execute a lease of all its property and rights, including a pulp mill then in successful operation at Orono to said Rice and Hosford, or to a corporation to be formed by them, for a term of twenty-five years at a rental thereon stipulated, and on January 14, 1892, the Bangor Pulp and Paper Company was incorporated.

March 1st, 1892, Robert W. Sawyer was elected treasurer and on the 1st of August, 1892, Messrs. Hosford and Rice assigned to the Bangor Pulp & Paper Company their contract with the Orono Pulp & Paper Company for a lease of their plant, etc., and on the same day, the directors of the Bangor Pulp & Paper Company voted that the assignment of the said contract be accepted, subject to all the obligations therein contained, and that the clerk be directed to notify the Orono Pulp & Paper Company of said assignment, and that "the lease referred to in said contract is to be issued to this corporation."

At the same time, the Bangor Pulp & Paper Company, the plaintiff corporation, voted "that whereas H. S. Rice et als. (others being Hosford) have this day assigned to this company the contract above referred to, this company issue to H. S. Rice et als. 600 shares of the capital stock in payment therefor, said stock to be issued as follows: 50 shares to H. S. Rice or order, and 550 shares to B. F. Hosford or order."

No stock was issued to Hosford, who without the knowledge of the defendant as he claimed, directed R. W. Sawyer in writing as follows: "Of the 550 shares of stock voted to-day to be issued to my order, please make out as follows: 50 shares, Charles H. Sawyer." The paper also contained directions how the remaining shares should be made out. The shares were made out in accord-

ance with the memorandum and a certificate was made unbeknown to the defendant, as he claimed.

The defendant testified that this certificate was never delivered to him; was never accepted by him and that he never knew that such certificate had been made out until the following spring, in April, 1893. It remained undetached from the stub in the stock book as late as September 15, 1893, a period of nearly fourteen months.

The defendant also testified that he first learned of the existence of the certificate in April, 1893, and that he told the treasurer, R. W. Sawyer, that he would not take it, and on the 29th day of May following he notified Mr. Whitman, the new treasurer, that he would not accept the stock; and he also notified Hosford July 14, following, that he would not take it. The list of stockholders of the company made and returned by its treasurer December 7, 1892, to the Secretary of State, as required by law, does not contain the name of the defendant as a stockholder.

The plaintiff introduced evidence showing that the defendant was present at a meeting of the board of directors of the Bangor Pulp & Paper Company, held in Boston, April 21, 1892, at which meeting he was unanimously elected a director and was present at a meeting August 1, 1892, when it was voted to issue to H. S. Rice and others six hundred shares of the capital stock of the company; also to issue 50 shares of this 600 to H. S. Rice, or order, and 550 shares to B. F. Hosford, or order. The record of the company shows that the defendant was present and voted for the issuing of the stock. The plaintiff further proved by the testimony of one Corbett, of Boston, that he purchased of the defendant the 50 shares in question for $1500 in July, 1893. The defendant, on the other hand offered evidence to prove that the treasurer R. W. Sawyer, who resigned May 9, 1893, had a claim against the company for $2000 for money lent; that the defendant was in Boston in July, 1893, in negotiation with Hosford trying to get his brother's money; Hosford said there was a certificate of 50 shares of stock standing in his name and asked him why he did not take it. The defendant told him, as he told Whitman, that he

did not consider it belonged to him, that he would not have it and would not have anything to do with it. Hosford said it was of value—was worth to the company $2500 and defendant told him he had better sell it and send the money down to Bangor and pay some bills the company owed down there. Hosford said it was in defendant's name and they could not sell it; and upon his solicitation Hosford brought out the stock book and asked defendant to indorse it, which defendant did and turned it into the company where, as he says, he supposed it belonged. He left the certificate in that condition with Hosford and it remained in possession of the company and was attached to the stub as late as September 15, 1893. The defendant also proved that the funds with which to pay off the indebtedness of the company to the treasurer R. W. Sawyer, were obtained by him at this time of Corbett and another stockholder through the intervention of Hosford.

For the purpose of showing the indebtedness of the insolvent corporation during the time of the defendant's alleged ownership of the stock, the plaintiff proved that the Agawam National Bank of Springfield, Mass., was a creditor of the insolvent corporation during the years 1892 and 1893 ; and further put in evidence a judgment recovered in the Supreme Judicial court, Penobscot county, by Bertha L. Whitmore, administratrix of the estate of Austin J. Whitmore, against the insolvent corporation rendered June 1, 1896, for $1852 damages. The damages thus recovered were a verdict against the insolvent company for the injuries received by Austin J. Whitmore, October 11, 1892, while employed in the mill of the insolvent company by the explosion of a digester in its mill; and he afterwards died from the effects of the injury. This execution was returned in no part satisfied. See *Whitmore* v. *Pulp Co.*, 91 Maine, 297.

Plaintiffs also offered the proof of debt filed by Bertha L. Whitmore in the insolvent court based upon the foregoing judgment. This evidence was objected to and admitted subject to the defendant's exception.

" Mr. Gillin—In order to protect our rights, we wish to show that the amount of indebtedness proved against this company in the

court below exceeded the amount of assets which have been returned.

Mr. Appleton—We object. We admit that the assets are not sufficient to discharge the liabilities."

The jury returned a verdict for the plaintiffs of $5000.

*P. H. Gillin, Charles J. Dunn and E. C. Ryder*, for plaintiffs.

The actual taking of shares in a corporation is equivalent to a subscription for, or an agreement to take them, under R. S., c. 46, § 47. *Barron* v. *Burrill*, 86 Maine, 72. The mere acceptance of shares of stock would have this effect. Thompson's Law of Corporations, § 1142; *Dayton* v. *Borst*, 31 N. Y. 435.

Hosford was the medium through which the stock was distributed. Neither the defendant, to whom the stock was issued, nor Hosford, through whose order the stock was distributed, paid anything for it. In other words: Hosford was simply a dummy who had no interest whatever in the stock and through whom a division of stock was made without payment. An attempt was made to show that a certain lease was a consideration for the sale of the stock to Hosford and Rice. If Hosford had received any consideration for the stock or had retained any part of it, this claim might have been set up with some expectation that it would be believed; but as a matter of fact, he never retained one single share of the 550 shares voted to him or his order. In other words: He gave away, in one day, $55,000 worth of stock which the defense attempts to show was worth that much or more and for which he never received any consideration whatever. The proposition is too improbable to be believed.

The stock ledger shows that certificate No. 2 was issued to the defendant and that it was afterwards, in July, 1893, surrendered by him. Book admissible to show defendant was, at one time, a stockholder. *Glenn* v. *Orr*, 96 N. C. 413; *Liggett* v. *Glenn*, 51 Fed. Rep. 381; *Hoagland* v. *Bell*, 36 Barb. 57; *Turnbull* v. *Payson*, 95 U. S. 418; *Webster* v. *Upton*, 91 U. S. 65; *Glenn* v. *Springs*, 26 Fed. Rep. 494; *Holland* v. *Duluth Iron Co.*, 65 Minn. 324; 1 Cook, Stocks & Stockholders, § 55.

It is not necessary that the certificate of stock be issued. 1 Cook, Stocks & Stockholders, § 192; *Barron* v. *Burrill,* 86 Maine, 66.

Rice, Hosford and others were promoters: *Bosher* v. *Richmond, etc., Land Co.,* 89 Va. 455, (37 Am. St. Rep. 879); *Ex-Mission Land & Water Co.* v. *Flash,* 97 Cal. 610; Alger, Law of Promoters, etc., § 1. The rule is that the relation of the promoter to the corporation and its members is one of trust. Buckley's Company's Acts, (5th Ed.) 543; *Yale Gas Stove Co.* v. *Wilcox,* 64 Conn. 101–119. What Hosford, Rice and others did, they did for the company. They had nothing to sell, and whatever sum that agreement or lease was worth, above the consideration paid for it, by the company, belonged to the company. Alger, supra, 28; *In re Ambrose, etc., Mining Co.,* 14 Ch. D. 398; *Ladywell Mining Co.* v. *Brookes,* 35 Ch. D. 400; *Pittsburg Mining Co.* v. *Spooner,* 74 Wis. 307, (17 Am. St. Rep. 149); *Plaquemines Tropical Fruit Co.* v. *Buck,* 52 N. J. Eq. 219.

The directors of a corporation occupy a position of the highest trust and confidence and the utmost good faith is required in the exercise of the powers conferred upon them. *Mallory* v. *Mallory Wheeler Co.,* 61 Conn. 131, 137; *E. & N. A. Ry. Co.* v. *Poor,* 59 Maine, 277.

A trustee or agent cannot purchase on his own account, what he sells on account of another; nor purchase on account of another, what he sells on his own account. Thompson's Corporations, § 458; *Parker* v. *Nickerson,* 112 Mass. 195; Ib. 137 Mass. 487.

The agreement between the Orono Company and Rice and others, shows that these parties were acting for the corporation afterwards to be formed, and the fact that within five weeks a corporation was formed, and that the lease provided for in the agreement was made directly to the Bangor company, shows that these parties were acting for the company; that the agreement was made for and in behalf of the company. Whether they are acting as promoters, or agents, is immaterial, because the same rules of law, which will apply to a promoter acting for a corporation, will apply to an agent also acting in the same capacity. In both

instances it is a position of trust. Thompson's Corporations, § 480 ; *Stowe* v. *Flagg*, 72 Ill. 329.

The Bangor company was to pay for the lease a yearly rental of $24,680, ten per cent upon the capital stock of the Orono company, also to deposit a certain amount annually for a sinking fund, and to build and equip, as part of the plant, a paper mill. The Orono company received for that lease a rental of $72,000, the sinking fund of $18,000, and a paper mill, which cost $100,000 ; so that for the lease, which the Bangor company held a few months over three years, the Orono company received $190,000, and also received back its original plant. If the position of the defendant is sustained, it paid for that lease, which it held a few months over three years, $240,000,—almost $100,000 more than its original capital stock.

The officers of a corporation are the trustees of the subscriptions to its stock, and hold them as a trust fund. And the trust cannot be defeated by any device short of actual payment in good faith. Thompson's Corporations, § 1606; *Wetherbee* v. *Baker*, 35 N. J. Eq. 501.

All agreements between the subscriber and a corporation, its officers, agents, promoters or members by which payment is dispensed with in whole or in part, or by which colorable or nominal payments are accepted, are void. Thompson's Corporations, § 1582; *Joy* v. *Manion*, 28 Mo. App. 55 ; *Ollesheimer* v. *Thompson Manufacturing Co.*, 44 Mo. App. 172.

*F. H. Appleton and H. R. Chaplin*, for defendant.

The statute contemplates that there must be a transaction or contract with the corporation in accepting, subscribing for, or agreeing to take stock. *Libby* v. *Tobey*, 82 Maine, 405.

No person can be made a stockholder in a corporation and subjected to all the liabilities incident thereto, without his agreement or consent. He must either subscribe for the stock, take it, or agree to take. it, or do some act which is tantamount to an acceptance of the stock before he becomes a stockholder.

A mere charge of shares of stock to a certain person, made upon the stock book of a corporation without some evidence that such

person admitted the charge to be correctly made, or sanctioned the same, cannot make him an owner thereof, so as to render him individually liable to the creditors of the corporation. *Fowler* v. *Ludwig*, 34 Maine, 455, 459.

One who never accepts, but refuses to accept any stock in a corporation, is not a stockholder even though the secretary enter his name in the books as such. *Mudgett* v. *Horrell*, 33 Cal. 25. There must be some evidence that he sanctioned the entry or admitted it to be correct. *Fowler* v. *Ludwig*, supra.

Plaintiff must prove: 1st. That the defendant was a stockholder in said insolvent corporation and the owner of 50 shares, and that he became such stockholder August 1, 1892; 2nd. That said stock was not "paid for bona fide in cash or in any other matter or thing at a bona fide and fair valuation thereof;" 3rd. That the Whitmore judgment based upon a tort and the claim of the Agawam National Bank are "debts" within the meaning of the statute contracted during the defendant's alleged ownership of such unpaid stock.

No stockholder is liable under c. 46, of R. S., § 47, for the debts of a corporation not contracted during his ownership of unpaid stock. The Whitmore judgment is based on a tort committed by the Bangor company October 11, 1892. Action was brought July 16, 1894, tried and a verdict for plaintiff January term, 1895, carried to law court and judgment rendered June 1, 1896. A tort is not a debt contracted. 2 Morawetz Corporations, § 880; *Bohn* v. *Brown*, 33 Mich. 257; *Child* v. *Boston, etc., Iron Works*, 137 Mass. 516, 519; *Cable* v. *McCune*, 26 Mo. 371. A tort claim cannot be a debt contracted by a corporation until it has been reduced to a judgment. *Zimmer* v. *Schleehauf*, 115 Mass. 52. A disputed claim for damages sounding in tort, is not a debt before it has been prosecuted to judgment. *Hill* v. *Bowman*, 35 Mich. 191; *Detroit, etc., Co.* v. *Reilly*, 46 Mich. 459; *Stone* v. *Boston & Maine R. R.*, 7 Gray, 539.

Under our insolvent law such a claim could not be proven against this insolvent corporation unless reduced to a judgment, and hence is not a debt until judgment is rendered.

Counsel also argued that the debt held by the Agawam National Bank was contracted after defendant's ownership of stock in this corporation. The note held by this bank, dated July 5, 1894, for $2500 was not a renewal of a previous note or notes, as argued by plaintiffs.

The defendant on July 14, 1893, transferred the certificate of stock in blank to put it back into the hands of the company. If this constituted an acceptance of the stock, the same act that made him a stockholder unmade him—and no debts were or could have been contracted by the company in that instant of time, and hence he cannot be held in this action.

The fifty shares of stock made out in defendant's name were paid for by an assignment of the agreement of August 1, 1892, to the Bangor company. That assignment, on that day, was worth 600 shares of stock of par value of $100 each—or in other words $60,000, "at a bona fide and fair valuation." *Libby* v. *Tobey*, 82 Maine, 405. The value of this manufacturing plant can be measured only by its net earning capacity. The earning power of property is the barometer of its value. The evidence shows that this plant had the power to earn and was actually earning the net profit of $6000 per month, or $72,000 per year, and had been earning at that rate for fourteen months prior.

Out of this $72,000 the Bangor Pulp & Paper Company had to pay to the Orono as rental and for sinking fund $30,850, leaving a clean profit to the Bangor of $41,150 per year out of which it could have paid a dividend of 12½ % on its own capital stock of $150,000, and had $22,400 left in its treasury for repairs, insurance and incidental expenses.

Can there be any doubt, then, that the assignment of such an agreement taken at a bona fide and fair valuation on August 1, 1892, was at least full payment for the 600 shares of stock issued to Hosford and Rice?—taking into consideration that this was a new mill, had been run and tested by actual operation for eighteen months,—with a trial balance showing profits as above stated,—was not the assignment August 1, 1892, with conditions as they existed on that day at its true value, worth the par value of the 600 shares voted as aforesaid?

The assignees cannot maintain this statute action until they have first administered the corporate assets and found out what the deficiency of such assets is. The deficiency measures a defendant's liability, and the extent of the liability cannot be ascertained unless the extent of the deficiency is first ascertained. A defendant cannot be legally held beyond his statutory liability. Supposing after an insolvent estate has been fully administered, it should appear that the deficiency of assets amounted to the sum of $500. The statute says, in such a case, that that sum would be the measure of the stockholder's liability; and by what process of reasoning, or by what considerations of justice, could a stockholder be made amenable to a judgment for any amount in excess of such sum? *Hewett* v. *Adams*, 54 Maine, 206.

Mr. Ryder in reply: The statute gives the assignee no power to bring suit, no additional rights which he did not have before at common law, but simply limits the right of the assignee to recover only when there is a deficiency of assets. The most that the assignee can be called upon to show, under the statute, is that there is a deficiency and that the deficiency equals the amount of unpaid stock. The plaintiffs offered to show this, and it was admitted by the defendant. *Terry* v. *Tubman*, 92 U. S. 156. In *re Glen Iron Works*, 17 F. R. 324, it was held that the corporation being insolvent, the money was not simply owing but presently due, and the opinion holds that no other question could have been presented. Recovery cannot be had without proof of insolvency, but this fact can be readily determined; it need not be determined in advance of the writ.

Mr. Gillin in reply: When the aggregate amount due upon shares from all the stockholders, solvent and insolvent, is not sufficient to liquidate the debts of the company, the assignee may bring an action against stockholders without there having been any previous assessment either by the corporation or by the court. See 3 Thompson on Corporations, § 3664, and the case *Boeppler* v. *Menown*, 17 Mo. App. 447, 455.

In the case of *Sanger* v. *Upton, Assignée*, 91 U. S. p. 62, the court says: "A separate action in law in each case against stock

holders is much to be preferred as against a bill in equity jointly against all the stockholders, it is cheaper, more speedy and more effectual." See also *Potts* v. *Wallace*, 146 U. S. p. 689, to the point that "no assessment is necessary, and it becomes a question for the jury whether the whole of the unpaid subscription was required to pay debts of the corporation or not," p. 700–1.

SITTING: EMERY, HASKELL, WHITEHOUSE, WISWELL, STROUT, SAVAGE, JJ.

EMERY, J. The Bangor Pulp and Paper Company was a corporation under the laws of Maine and doing business in this State. Certain of its creditors believing it to be insolvent asked the proper court of insolvency to so adjudicate, and to cause its assets to be administered under the direction of that court. The corporation, upon that petition and regular proceedings under it, was on the 4th day of June, 1896, adjudged to be an insolvent debtor, and on the same day the usual warrant was issued for the sequestration of its assets. On the 25th day of the same June the plaintiffs were appointed and qualified as assignees of the corporation under the insolvency proceedings. They received the usual instrument of assignment of the debtor's estate and entered upon the duty of administering it. On the 18th of June, 1897, they brought this action at law against the defendant to recover the par value ($100) of fifty shares of the capital stock of the corporation alleged to have been taken by the defendant and not paid for.

The plaintiffs claim to recover, independent of any statute creating a liability of the stockholder for debts of the corporation, upon the ground that the defendant stockholder was a debtor to the corporation for the unpaid stock, and that this debt was an asset of the corporation which they could recover as a debt due the corporation like any other debt due it.

It appears, however, from the uncontradicted evidence, that if the defendant did take the fifty shares of stock as alleged, it was under an agreement with the corporation that the shares were fully paid for by the assignment of a lease of a business

plant to the corporation by the defendant and his associates. The lease was assigned to the corporation and the board of directors voted to accept such assignment in full payment for these fifty and other shares. There is no evidence of any intent to defraud the corporation or its stockholders by this transaction. So far as appears, the parties believed that the assignment of the lease was a sufficient consideration for the shares, and there was considerable evidence that it was in fact a sufficient consideration.

Assuming, what was not disputed, that the directors had the powers of the corporation in this respect, the defendant did not owe the corporation anything for the stock. As between those two parties the stock was paid for. The corporation had no claim against him on that account, at least until it rescinded the contract and restored the property received in exchange for the stock, and this does not appear to have been done. *Handley* v. *Stutz*, 139 U. S. 417; *Foreman* v. *Bigelow*, 4 Cliff. 508.

But the plaintiffs also claim, and rightly, that the creditors of the corporation are not bound by the contract above described and that they, as representing the creditors, have rights in respect to these shares superior to the rights of the corporation itself. They invoke the principle of law expressed in the statute, R. S., ch. 46, § 45, that the capital stock of any corporation is and stands for the security of all its creditors; and that no payment or agreement for shares of the capital stock shall be deemed a payment as against creditors, unless bona fide made in cash, or in some other matter or thing, at a bona fide and fair value thereof.

This principle enables the creditors of the corporation to go behind even the honest opinion of the directors of the corporation and to question the actual sufficiency of the consideration paid for the shares taken by the defendant. By virtue of §§ 46 and 47 of the same chapter, the plaintiffs, being "persons appointed to close up the affairs of an [this] insolvent corporation," may maintain an action at law against the defendant for that purpose, and to recover any deficit in the actual sufficiency of the consideration. The defendant thus may be liable to pay to a creditor of the corporation or to the persons appointed to close up the affairs of the

corporation a greater sum, not exceeding the par value of his shares, than he was liable to pay to the corporation itself.

This liability to creditors, however, is not a direct primary liability like that to the corporation upon subscribing for its shares. The insolvency statute alone does not authorize assignees to enforce it. It is a secondary liability somewhat like that of a guarantor. *Hicks* v. *Burns*, 38 N. H. 141. The authority to enforce it is conferred by the statute defining it. Sections 46 and 47, supra. The creditor of the corporation cannot at once upon the maturity of his debt proceed against the delinquent stockholder. He must obtain a judgment against the corporation, and only in case the judgment remains unpaid can he maintain an action at law or in equity against the stockholder for his individual claim, and then only for the amount remaining unpaid on the judgment. (Section 47.) The stockholder cannot be considered delinquent or in default until the creditor has recovered and holds such an unpaid judgment. The right of action against him then first accrues. *Libby* v. *Tobey*, 82 Maine, 397. The nature of the liability is the same when sought to be enforced by receivers, trustees or other persons appointed to close up the affairs of an insolvent corporation By the express terms of the statute (section 47) the liability is limited to "the deficiency of the assets" of the insolvent corporation. As the individual creditor must first have the fact and amount of his unpaid debt, that is, the fact and amount of the default of the corporation to him, judicially ascertained and adjudicated before he can move against the stockholder,—so receivers, trustees, etc., must first have the fact and amount of the deficiency of the assets that is, the fact and amount of the default of the corporation to all its creditors, judicially ascertained and declared before they can move against stockholders. In either case there is no right of action against the stockholder until the corporation makes default, and the amount of the default is judicially established. The statute limitation of the right of action against the stockholder does not begin to run in favor of the stockholder until that has been done.

There is usually no question in what court the individual

creditor may proceed to establish the fact and amount of the default of the corporation to him, but it may be an important question in what court, the receivers, trustees, etc., should proceed to establish the fact and extent of the default of the corporation to all its creditors, or the fact and amount of the deficiency of the assets.

In this case, the creditors, instead of pursuing their individual remedies, or invoking the equity powers of this court, elected to have the estate of the insolvent corporation administered in the court of insolvency under the insolvency statutes. That court lawfully acquired jurisdiction of the parties and of the subject matter. The plaintiffs derive their powers of such administration from that court and those statutes, and are accountable to the corporation, its stockholders and its creditors in that court for the faithful and efficient exercise of those powers. What assets they are chargeable with, and what claims they shall recognize as liabilities of the corporation are questions primarily determinable by that court. It follows that the existence and extent of any deficiency of the assets of the corporation are likewise primarily determinable there.

This determination, however, must be once for all, and hence only after a full administration of the estate of the corporation. The question of the amount of the deficiency of the assets, which is one measure of this secondary liability of the stockholder, evidently cannot be litigated anew and perhaps with a different result in the case of each stockholder. That amount must be the same as to all delinquent stockholders. The only difference in the amount of their several liabilities is in the amount unpaid on their stock. It follows that the fact and amount of the deficiency of the assets of the corporation must be determined finally in and by the court of insolvency before any action at law is begun against the stockholder on his secondary liability. This determination can be made only upon the settlement and approval of an account by the assignees showing a complete administration of the assets by their reduction to cash, and showing the net amount available for the payment of claims. If, at that date, claims have been

proved and allowed in excess of that amount, the fact and amount of the corporation's default, as to those creditors at least, are then ipso facto judicially ascertained and declared. It is at the date of that decree of approval by the insolvency court that the right of action against the stockholder upon his secondary liability to such creditors accrues, and the two years limitation (section 47) upon the right of action begins to run in his favor. *Scovill* v. *Thayer*, 105 U. S. 143; *Hawkins* v. *Glenn*, 131 U. S. 319.

To prevent possible misconception of the scope of this opinion we iterate that we are only considering the case of the secondary liability of a stockholder, who has paid to the corporation the agreed price for his stock and is not indebted to the corporation itself for any part of the price, but who is summoned to answer to creditors for the difference between the par value of his stock and what he actually paid for it. We are not considering at all the primary liability of a stockholder to the corporation or its successors, the assignees, upon his stock subscription. That liability and its enforcement are governed by other rules and principles.

The position of insolvency assignees in respect to a right of action against delinquent stockholders is analogous to that of an administrator who has paid a creditor in full under a mistaken impression that the estate was solvent. In such case, if the estate afterward proves to be insolvent, the administrator is entitled to recover back from the creditor a pro rata share; but an action cannot be maintained by him for that purpose until the existence of the insolvency of the estate, and its extent have been ascertained and adjudicated in the probate court in which the estate is being administered. *Morris, Admr.,* v. *Porter,* 87 Maine, 510. The plaintiffs' position is also somewhat analogous to that of the receiver of a national bank who is closing up its affairs under the authority and direction of the Comptroller of the Currency, according to the provisions of the National Bank Act. Such receiver cannot maintain any action against a stockholder to enforce his liability, until the Comptroller has determined the existence and amount of the deficiency of assets, and made an assessment therefor on the stockholders. *Kennedy* v. *Gibson,* 8 Wall. 498. Indeed,

the adjudication of the Comptroller upon these questions is conclusive.　*Casey* v. *Galli*, 94 U. S. 673.

We do not mean, however, that the insolvency court in this case should apportion the deficiency of assets and make assessments on delinquent stockholders.　The liability of the stockholder in this case is not pro rata as in the case of National Banks, but is absolute.　As soon as the fact and amount of the deficiency of assets are ascertained in that court, there is a right of action in this court against any delinquent stockholder.　That other delinquent stockholders are not also sued is immaterial under our statute.

In this case, there is no evidence that the plaintiffs before bringing this action had proceeded so far in the administration of the estate in the insolvency court, that the existence and extent of a deficiency of the assets had been authoritatively ascertained and declared in that court.　The mere fact that the corporation had been declared insolvent at the instance of the creditors is not proof of the existence of any actual deficiency of assets upon the settlement of the estate.　An estate at first supposed to be insufficient, and hence subjected to the jurisdiction of the insolvency court, may under prudent administration turn out to be sufficient to pay all proved claims in full.

The plaintiffs urge, however, that they offered such evidence, but that the defendant objected to it and admitted that there was a deficiency of assets.　We find that the following occurred at the trial:　The counsel for the plaintiffs offered the records of the insolvency court in the case of the Bangor Pulp and Paper Co., insolvent debtor, to show the insolvency of the company and "to show the amount of the assets."　The counsel for the defendant admitted the corporation to be insolvent but objected "to the amount of assets as immaterial."　The plaintiffs' counsel did not press the matter nor ask for any ruling by the court.　A little later in the trial the plaintiffs' counsel said:　"In order to protect our rights, we wish to show that the amount of indebtedness proved against this company in the court below (the insolvency court) exceeded the amount of the assets which have been returned."

The defendant's counsel objected, and said: "We admit the assets are not sufficient to discharge the liabilities." The court did not rule. The plaintiffs' counsel did not insist, but seemed to be content with the admission.

There was no admission, nor offered evidence even, that the estate of the insolvent corporation had been settled in the insolvency court, and that the existence and extent of a deficiency of the estate had been there judicially ascertained and declared. The admission and the offered evidence went only to the single point that the corporation was in fact insolvent, that its assets would not in fact meet its liabilities. There was no suggestion that there had been any action by the insolvency court in the premises, or that the assets had been so far realized, or even appraised and accounts so far settled, that the extent of the deficiency of assets was ascertained or could be ascertained before this action was begun. This however was the essential pre-requisite to the maintenance of the action. No right of action would accrue until then.

The verdict must be set aside and the case sent back for the production of the requisite evidence, if any, of "the deficiency of assets," judicially ascertained prior to the beginning of this action.

*Motion sustained.*