JOHN A. ROEBLING'S SONS CO. OF CALIFORNIA v. KINNICUTT et al.

(District Court, S. D. New York. December 26, 1917.)

1. EQUITY ☞43—JURISDICTION OF FEDERAL COURTS—ADEQUATE REMEDY AT LAW.

In the federal courts the distinction between law and equity is substantial and not technical; jurisdiction in equity being withheld by statute where a plain, adequate, and complete remedy may be had at law.

2. DISCOVERY ☞20—DEMURRER TO RELIEF—EFFECT.

Where in a bill for discovery and relief the discovery sought is incident to the relief sought, a demurrer well taken to the relief is also good as to the discovery.

3. COURTS ☞371(2)—JURISDICTION OF FEDERAL COURTS—EFFECT OF STATE STATUTES.

That a state statute authorizes a suit in certain cases by bill in equity does not confer jurisdiction on a federal court to entertain such a bill.

4. CORPORATIONS ☞265(1)—INSOLVENCY—SUITS AGAINST STOCKHOLDERS— NECESSARY PARTIES.

Where there are a number of creditors, a single creditor cannot maintain a bill in equity against the stockholder of an insolvent corporation to collect unpaid subscription for his benefit alone.

5. TRIAL ☞11(3) — FEDERAL COURTS — PROCEDURE — TRANSFER OF CAUSE BROUGHT ON WRONG SIDE.

Where a bill is insufficient to give a federal court jurisdiction in equity, but states a cause of action at law, the court is required by Act March 3, 1915, c. 90, 38 Stat. 956 (Comp. St. 1916, § 1251a–1251c), to transfer the cause to the law side.

6. CORPORATIONS ☞268(1)—INSOLVENCY—ACTIONS AGAINST STOCKHOLDERS.

Under Rev. St. Me. 1903, c. 47, § 50, which authorizes corporations to issue stock for property or services, which shall be full-paid stock, and provides that "in the absence of actual fraud in the transaction the judgment of the directors as to the value of the property purchased or services rendered shall be conclusive," creditors seeking to hold stockholders of an insolvent corporation, who obtained their stock in payment for property, liable under other provisions of the statute, on the ground that their stock is not full paid, must competently allege facts showing actual fraud.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the John A. Roebling's Sons Company of California against G. Hermann Kinnicutt and others. On motion to dismiss bill. Motion granted.

See, also, 243 Fed. 527, 156 C. C. A. 225.

The complaint alleges that: (1) Plaintiff is a California corporation. (2) Kinnicutt, Bacon, Kissel, and Fuller, copartners doing business as Kissel, Kinnicutt & Co. (hereinafter called Kissel), and Hepburn, Hine, and Mainland, the trustees, and Hendee, are citizens of New York and residents within the Southern District. The amount involved is jurisdictional. Idaho Railway, Light & Power Company (hereinafter called Railway) is a Maine corporation, having an authorized capital stock of 300,000 shares, par value $100 per share, of which 200,000 are common and 100,000 preferred. (3) Railway was qualified to and did do business in Idaho, and was there the owner of certain railroad and other properties. (4) Between March and May, 1913, plaintiff sold and delivered to Railway, in Idaho, merchandise of the value of $38,577.17, which Railway agreed to pay. (5) Of this amount $21,057.37, with interest, remained unpaid. (6) In December, 1913, the Westinghouse Company, a Pennsylvania corporation, brought suit by a creditors' bill against Railway in the District Court of the United States for the District of Idaho, Southern Division, and a receiver was appointed and Railway was adjudged insolvent. (7) About December 20, 1915, the District Court aforesaid entered its "final decree and judgment" by which, inter alia, it was adjudged and decreed that Railway was indebted to plaintiff upon its above-mentioned claim in the sum of $24,960.29 (principal and interest). Thereafter execution was issued and returned wholly unsatisfied. (8) The Revised Statutes of Maine provide for personal liability of stockholders for debts of a Maine corporation (which provisions will be referred to infra). (9) Prior to the sale of the merchandise by plaintiff to Railway a syndicate was formed for the purpose of acquiring and controlling certain railroad and other properties in Idaho and Oregon, which syndicate was composed of Kissel and others (Kissel being syndicate manager) and acquired control of certain securities and other property, including the stock of Railway to be organized under the laws of Maine. Between November, 1911, and August, 1912, in pursuance of an agreement between members of the syndicate whereby each member was to be the separate owner of a specified amount of the common stock of Railway, the syndicate made certain written proposals to the board of directors of Railway whereby the syndicate offered to sell to Railway the stock and other property held by the syndicate in consideration of the issuance and delivery to the syndicate, or upon its order, of a large amount of securities of Railway, including approximately $6,630,000 of its 5 per cent. first and refunding bonds secured by a mortgage upon all the property of Railway, and together therewith approximately 96,896 shares of the common stock of Railway aggregating at par value $9,689,600. The property was sold under foreclosure and realized far less than the face of the mortgage bonds. (10) The value of the assets of Railway prior to foreclosure did not exceed $4,000,000, and since foreclosure Railway has had no assets with which to pay its remaining indebtedness and has ceased to carry on business, and it is therefore requisite to call on the holders and owners of Railway's capital stock to discharge the amount remaining unpaid on the capital stock. (11) The offers above mentioned were, prior to August, 1912, accepted by the Railway's board of directors, which consisted, in part at least, of the members of the syndicate. Said Railway's directors, pursuant to the offers, caused approximately $6,630,000 of the bonds and approximately 96,896 shares of common stock to be issued to or on the order of the members of the syndicate, and "for convenience caused certain certificates" of the capital stock "to be issued or transferred to and held by" Hepburn, Hine, and Mainland "as trustees for the said syndicate and members thereof," and "said capital stock * * * thereupon became and was the separate property of the members of said syndicate in certain agreed shares or parts, the exact amount of which" plaintiff does not know. The members of the syndicate, however, then and there became and ever since have been owners of not less than 12,000 shares of the capital stock of Railway, and said certificates, representative of the

capital stock, ever since their issue to the trustees (including the date of the incurring of the debt of Railway to plaintiff), have been and are now held by the trustees for the separate benefit of the members of the syndicate. The total outstanding stock of Railway is $12,565,100, par value, common, and $3,536,400, par value, preferred, and the total outstanding bonds is about $9,095,000. (12) The stock and other property which the syndicate transferred to Railway in return for the issuance to the members of the syndicate of the bonds and stock were of less value than the bonds issued, executed, and delivered by Railway and no consideration was paid by Railway for the 96,896 common, and neither defendants nor any member of the syndicate paid to Railway any consideration whatsoever upon the par value of the 96,896 common, which, including stock belonging to the members of the syndicate, remains unpaid. (13) The Kissel firm individually and as copartners became subscribers for not less than 13,000 shares for which payment has not been made bona fide in cash or otherwise at a fair valuation and under the laws of Maine are liable to judgment creditors as original subscribers for the amount remaining unpaid on their subscriptions. (14) The members of the syndicate (except Fuller for one share) do not appear on the books of the Railway as stockholders of record. The trustees appear on the books as holding 96,896 shares of common, but that plaintiff has no means of ascertaining who are the real or equitable owners of the stock liable to the creditors of Railway, except by a discovery and accounting. (15) That Hendee was a subscriber for not less than 3,000 shares, which were issued to him for the benefit of Fuller, or of the Kissel firm and therefore that Hendee, or the person or corporation for whom he holds the stock, is liable, as an original subscriber to judgment creditors. (16) Plaintiff is without a plain, complete, and adequate remedy at law.

The relief prayed for is as follows: (1) That the usual writ of subpœna issue. (2) That defendants Kissel (this does not include Hepburn nor Hine) may set forth an account of any right, title, or interest in and to any shares of the capital stock of Railway subscribed for or agreed to be taken or held by them, or any of them, or by any one for their benefit, and briefly, all the circumstances under which all and every of payments or transfers or subscriptions or agreements were respectively made, and how the same respectively have been applied or disposed of. (3) That defendant George E. Hendee may, in effect, make full discovery concerning his holding. (4) That there be a discovery of the terms of the trust, and an adjustment of liabilities thereunder, of all parties herein named as defendants. That defendants Hepburn, Hine, and Mainland may set forth an account of the transactions by which they became trustees or voting trustees of any shares of stock in the Railway, the number and par value of said shares, and the terms and conditions upon which they hold the same. The name or names of the person, persons, partnerships, or corporations for whom or which said shares or any of them are held by said trustees; any sum or sums of money or other matter of value received by or paid by said trustees or any of them for the said shares of capital stock or any of said shares in consideration of any right, title, or interest, legal or equitable, which may have been transferred, assigned, or set over to said trustees; and what persons, partnerships, or corporations are, or were at any time herein mentioned, the real and true owners in law or equity of said shares of stock so held by said trustees. (5) That the defendants, or any of them, may be adjudged and decreed to pay to the plaintiff the amount of the balance due on the debt of Railway, to wit, $24,960.29, with interest according to the provisions of the laws of Maine, the contribution of each of said defendants to be computed thereunder according to the amount unpaid bona fide in cash or other thing or matter of value on the par value of any shares of the capital stock of Railway for which said defendants or any of them are adjudged to have subscribed and which were held by or for them or any of them at the time the said debt of Railway to plaintiff was incurred. (6) That plaintiff may have such other and further relief, etc. Plaintiff does not sue on behalf of all creditors, nor is the bill against all the stockholders of Railway.

The grounds for the motion to dismiss on behalf of Hepburn and Hine, individually and as trustees (which are inclusive of the grounds for the motion

made on behalf of Kissel et al.), are: (1) That the bill does not state a cause of equity. (2) That this court has no jurisdiction of the subject of the suit. (3) That there is a defect of parties, in that, as appears on the face of the bill: (a) There are other creditors of Railway who are not made parties; (b) plaintiff sues individually, and not in behalf of itself and other of such creditors similarly situated; (c) there are other stockholders of Railway, necessary parties defendant herein, who are not made parties defendant; and (d) Railway is not made a party. (4) That the bill is multifarious, in that: (a) The liability alleged is not one asserted against all the material defendants and sufficient grounds do not appear for uniting the alleged causes of action in order to promote the convenient administration of justice; (b) it seeks independent judgments upon separate causes of action against different defendants; and (c) it joins causes of action against defendants Hepburn and Hine in different capacities.

The relevant sections of the Maine statute (R. S. of Maine, chapter 47, sections 87, 88, 89, and 50) are quoted below:

"Sec. 87. The capital stock subscribed for any corporation is declared to be and stands for the security of all creditors thereof; and no payment upon any subscription to or agreement for the capital stock of any corporation, shall be deemed a payment within the purview of this chapter, unless bona fide made in cash or in some other matter or thing at a bona fide and fair valuation thereof.

"Sec. 88. No dividend declared by any corporation from its capital stock or in violation of law, no withdrawal of any portion of such stock, directly or indirectly, no cancellation or surrender of any stock, and no transfer thereof in any form to the corporation which issued it, is valid as against any person who has a lawful and bona fide judgment against said corporation, based upon any claim in tort or contract or for any penalty or as against any receivers, trustees or other persons appointed to close up the affairs of an insolvent corporation.

"Sec. 89. Any person having such judgment * * * may, within two years after their right of action herein given accrues, commence an action on the case or bill in equity, without demand or other previous formalities, against any persons, if a bill in equity, jointly or severally, otherwise severally, who have subscribed for or agreed to take stock in said corporation and have not paid for the same; or who have received dividends declared from the capital stock, or in violation of law; or who have withdrawn any portion of the capital stock, or cancelled and surrendered any of their stock, and received any valuable consideration therefor from the corporation, except its own stock or obligation therefor; or who have transferred any of their stock to the corporation as collateral security or otherwise, and received any valuable consideration therefor as aforesaid; and in such action they may recover the amount of the capital stock so remaining unpaid or withdrawn, not exceeding the amounts of said judgments or the deficiency of the assets of such insolvent corporation."

"Sec. 50. Any corporation may purchase mines, manufactories and other property necessary for its business, and the stock of any company or companies owning, mining, manufacturing or producing materials or other property necessary for its business, and issue stock to the * * * value thereof in payment therefor, and may likewise issue stock for services rendered to such corporation and the stock so issued shall be full-paid stock and not liable to any further call or payment thereon; and in the absence of actual fraud in the transaction, the judgment of the directors as to the value of the property purchased, or services rendered, shall be conclusive."

Noble, Estabrook & McHarg, of New York City (Henry D. Estabrook, of New York City, of counsel), for plaintiff.

Charles E. Rushmore and James F. Sandefur, both of New York City, for defendants Hepburn and Hine.

Frank L. Crocker, of New York City, for defendants Kinnicutt, Bacon, Kissel, Fuller, and Hendee.

MAYER, District Judge (after stating the facts as above). 1. As it is not alleged that either Hepburn or Hine was a subscriber, the bill must be dismissed as to each of them individually.

[1] 2. It is clear that, while the relief sought is a money judgment, the bill is for a discovery. The distinction between law and equity is substantial, and not technical, as urged by plaintiff (Judicial Code, § 267; Comp. St. 1916, § 1244), although mere matters of procedure are now regulated with desirable elasticity (Act March 3, 1915, 38 Stat. 956). In the United States courts, examinations before trial, in actions at law, are unknown, and hence litigants on the law side cannot avail of the system in that regard, familiar to the New York courts. A defendant, of course, is entitled to a jury trial, if the action is at law, and hence the insistence that a cause is not one of equity, but of law, involves substantial rights.

[2] The complaint, as here framed (disregarding, for the moment, the Maine statute), falls within the principle stated by Judge Rogers in Church v. Swetland, 233 Fed. 891, at page 896, 147 C. C. A. 565, at page 570:

"Where, in a bill for discovery and relief, the discovery sought is incident to the relief sought, a demurrer well taken to the relief is held to hold good as to the discovery also. In McClanahan v. Davis, 8 How. 170, 183, 12 L. Ed. 1033 (1850), Mr. Justice Nelson, speaking for the court, said: 'The complainant having, in our judgment, failed to set forth any foundation for relief, the right to the discovery, which is claimed as incidental, of course fails with it.'"

See, also, Curriden v. Middleton, 232 U. S. 633, 34 Sup. Ct. 458, 58 L. Ed. 765.

[3] 3. The fact that the Maine statute authorizes a suit by way of bill in equity does not confer jurisdiction upon this court to entertain such a bill. This precise question was considered in Alderson v. Dole, 74 Fed. 29, 20 C. C. A. 280,[1] the court observing:

"Independently of the statutes of Maine, there could be no jurisdiction in equity. Those statutes cannot affect the jurisdiction of the federal courts in that particular."

See, also, Van Norden v. Morton, 99 U. S. 378, 25 L. Ed. 453; Wehrman v. Conklin, 155 U. S. 327, 15 Sup. Ct. 129, 39 L. Ed. 167; Mathews Slate Co. v. Mathews (C. C.) 148 Fed. 490; Street on Federal Equity Practice, § 23; Simkins' Treatise on a Federal Equity Suit (3d Ed.) p. 17.

[4] 4. As stated in Signor Tie Co. v. Monett & S. W. Const. Co. (D. C.) 198 Fed. 412:

"The law has been well settled by a long line of decisions of the Supreme Court of the United States and the national courts generally, where there are a number of creditors, that a single creditor cannot maintain a bill in equity against the stockholders of an insolvent corporation, having no corporate assets, to collect unpaid subscriptions from the stockholders, and thus

---

[1] To clear up the suggestion of plaintiff that plaintiff in the Alderson Case was not a judgment creditor, Mr. Rushmore has had the record examined by Boston attorneys and they report that "court records show that the bill of complaint * * * alleged judgment against the corporation entered * * * in the Circuit Court. * * *"

enable him to secure payment of his own debt to the exclusion of the other creditors."

See, also, Pollard v. Bailey, 87 U. S. (20 Wall.) 520, 22 L. Ed. 376; Gillin v. Sawyer, 93 Me. 151, 44 Atl. 677; Middletown Bank v. Railway Co., 197 U. S. 394, 25 Sup. Ct. 462, 49 L. Ed. 803.

5. The case is not one where equity will take jurisdiction in order to prevent multiplicity of suits. Hale v. Allison, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380.

[5] Other grounds advanced by defendants are sound, but enough has been pointed out not to require further discussion on the proposition that the bill, as framed, will not lie in equity. If, however, the pleadings set forth an action at law the cause would be transferred to the law side. Act March 3, 1915, 38 Stat. 956; Church v. Swetland (District Court memorandum opinion by Judge Lacombe, Oct. 30, 1915, and my memorandum opinion, dated May 11, 1916, neither reported).

[6] 6. Consideration is therefore required of the contention of defendants that the allegations of the bill do not set forth the "actual fraud" referred to in section 50 of the Maine statute, viz.:

"In the absence of actual fraud in the transaction, the judgment of the directors as to the value of the property purchased * * * shall be conclusive."

The complaint, in effect, alleges that the property transferred by the syndicate was exchanged for the bonds and stock of Railway. Plaintiff then assumes, not as a fact, but as a conclusion, that the stock was issued for nothing. The allegation as to the payment for the stock not being made "bona fide in cash or in any other matter or thing at a bona fide and fair valuation thereof" is a mere conclusion. That result must follow from some facts alleged. It is elementary that when fraud is relied upon it must be competently alleged. The meaning of the Maine statute is thus stated in Dyer on Corporation Law (7th Ed.) p. 90:

"This section is copied literally from the present New Jersey Law, enacted in 1896, except that a provision is added that shares may be issued for services, and to this extent our statute in terms is more favorable to incorporators and stockholders than the New Jersey act. It undoubtedly reduces to some extent the liability of original subscribers to the stock of a corporation formed under our general law, and the foregoing provisions relating to stockholders' liability, and the decisions under them, must be read in the light of it. This limitation is to be found in the substitution of the judgment of the directors for that of the court; in the power to fix the value of the property or services at the inception of the enterprise; and perhaps in the words 'in the absence of actual fraud' as distinguished from 'a bona fide and fair valuation' of the earlier section. The statute as it stood before the enactment of the section just referred to enabled the creditor of a corporation to go behind even the honest opinion of its directors and to question the actual sufficiency of the consideration for which the shares might have been issued. * * * The statute as it stands has yet to be construed by our court; but, in view of the fact that it is a copy of the New Jersey law, the decisions of the courts of that state will furnish us with some indication of the construction which will prevail in Maine."

See, also, McMahon v. Pneumatic Transit Co., 85 N. J. Eq. 544, 96 Atl. 999; Coit v. Gold Amalgamating Co., 119 U. S. 343, 7 Sup. Ct. 231, 30 L. Ed. 420.

7. Under some circumstances, Hepburn and Hine, as trustees, might be proper, if not necessary, parties, and that question need not now be passed upon.

The motion as to Hepburn and Hine individually is granted unconditionally, with costs. The bill as to the remaining defendants, and Hepburn and Hine as trustees, is dismissed, with leave to amend within 20 days. If not amended, the bill as to them will be dismissed, with costs.

ADDENDUM.—I note with deep regret, the death of Mr. Estabrook. The attorneys for plaintiff, if they desire, may therefore have more time within which to amend.

Settle order on notice.